# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03107

JENNIFER ANN SMITH, a citizen and taxpayer of
the State of Colorado, LIGGETT GROUP LLC,
VECTOR TOBACCO INC., and XCALIBER
INTERNATIONAL LTD., LLC,

Plaintiffs,

v.

STATE OF COLORADO, by and through JARED S.
POLIS, in his official capacity as Governor of
Colorado, PHILIP J. WEISER, in his official capacity
as Attorney General of Colorado, and HEIDI
HUMPHREYS, in her official capacity as Interim
Executive Director of the Colorado Department of
Revenue,

Defendants.

## DECLARATION OF STEVEN D. SHIPE

I, Steven D. Shipe, declare as follows:

      1.     I am the Vice President of Sales and Marketing Services for Liggett Vector Brands LLC, which is the exclusive sales, marketing, and distribution agent for cigarettes manufactured by its affiliates Liggett Group LLC ("Liggett') and Vector Tobacco Inc. ("Vector"), both of which are Plaintiffs in this action. I submit this declaration in support of Plaintiffs' Motion for Preliminary Injunction.

2. I have been employed by Liggett, Vector and their predecessor entities and affiliates since 1980, and I have held my current position of Vice President of Sales and Marketing since 2006. My professional duties require me to create policy, monitor, implement and play a supervisory role for the companies' business and sales operations, marketing efforts, distribution, and sales performance throughout the country, including daily management and support for the 150 field sales and marketing personnel for Liggett and Vector.

3. As Vice President of Sales and Marketing Services, it is my responsibility to understand our sales performance, consumer markets and market competition, and to create and implement strategies to maximize Liggett and Vector's sales, market share, and ultimately, profitability.

4. Liggett and Vector are tobacco companies that manufacture discount brand cigarettes and sell them throughout the United States. Liggett and Vector do not sell their cigarettes directly to consumers, but sell their cigarettes to consumers through a network of distributors and retailers. As discount cigarette manufacturers, Liggett and Vector compete by pricing their products lower than most other domestically sold brands and thus sell their products in the "discount segment" of the domestic cigarette market. Liggett and Vector's combined share of the total domestic cigarette market is approximately 4% in terms of unit sales.

5. Liggett is the operating successor to Liggett & Myers Tobacco Company, which manufactured and sold premium brand cigarettes, including Chesterfield, L&M and Lark. Beginning in the 1980s, Liggett began to de-emphasize its premium brands and pioneered what is today the discount segment of the cigarette market, by competing largely based on price, rather than image and advertising. In 1998, Liggett sold its remaining rights to the Chesterfield, L&M

2

and Lark brands, and today Liggett operates by selling branded products exclusively in the discount segment of the cigarette market.  Liggett also manufactures private label brands that are sold and distributed by certain retail customers.

6. Liggett began focusing exclusively on the discount market in 1998 after breaking ranks with the major domestic tobacco companies to become the first domestic tobacco company to settle smoking and health-related litigation, including by entering into the first-ever settlements of Medicaid expense recovery litigation brought by state attorneys general against the major domestic tobacco companies.  As part of these landmark settlements, Liggett agreed to change the way it marketed and sold its cigarettes, including by, among other things, stating publicly that "smoking is addictive" and causes serious diseases and death, adding a warning regarding addiction to its cigarette packs and cartons, and discontinuing virtually all conventional consumer advertising and marketing of its cigarette products.

7. Liggett's settlements and its cooperation with the state attorneys general and public health authorities were key to enabling the attorneys general of all fifty states, including Colorado, to recover more than $200 billion in Medicaid expenses on behalf of the states from the major domestic tobacco companies.  These global settlements also resulted in revolutionary changes in the way the domestic tobacco industry operates, including increased advertising and marketing restrictions.

8. Currently in the U.S. market, there are certain established premium brand cigarettes, such as Philip Morris's Marlboro, which command higher prices based on name or brand recognition.  Most, if not all, of the premium cigarette brands that exist today were established long before consumer marketing and advertising were restricted more than 20 years

3

ago. Since those restrictions took effect, it has become virtually impossible to create, support or launch a new premium brand cigarette or to compete in the domestic cigarette market with conventional consumer advertising. The limited set of premium brand cigarettes enjoy a competitive advantage in the U.S. cigarette market, including commanding higher prices, more dominant market share, and greater brand recognition over all discount cigarette brands. Liggett, Vector, and other discount cigarette manufacturers cannot compete with premium manufacturers by using conventional consumer advertising to create a premium brand, but rather compete based on price.

9. Liggett and Vector compete with other discount and premium brand cigarette manufacturers throughout the United States by offering lower prices for their products. Discount brand cigarettes have been able to compete effectively against premium brand cigarettes in Colorado and elsewhere in the United States, by attracting price-conscious adult smokers who do not want to pay the higher prices for premium brands. Price competition by discount brand cigarette manufactures has reduced the profitability of the premium brand sellers.

10. There are no companies that manufacture cigarettes in Colorado. All cigarettes that are sold in Colorado are manufactured outside of the State and are sold to consumers in Colorado through a network of distributors and retailers. Liggett and Vector do not sell their cigarettes directly to consumers in Colorado, but to distributors and retailers who sell their cigarettes to the end consumer in Colorado.

11. Liggett and Vector do not, and cannot, set the retail prices for their cigarettes in Colorado or elsewhere. Because the cigarette market is national in scope, Liggett and Vector sell their discount cigarette brands to wholesalers and distributors at a single nationwide

4

Manufacturer's List Price ("MLP") that is specific to each cigarette brand. If Liggett or Vector attempted to set a higher wholesale price for cigarettes directed for sale in Colorado, Colorado retailers could by-pass the higher state-specific price and purchase Liggett or Vector cigarettes from distributors who sell them at the national MLP price. The MLP for each brand is generally set by the companies two or three times a year based on internal costs, competition, supply and demand factors and overall national market conditions. Among other things, the MLP is based on the cost of goods sold, plus federal cigarette excise taxes, user fees paid to the Food and Drug Administration, and costs associated with state settlement agreements, including the 1998 Master Settlement Agreement.

12.     Once Liggett and Vector's cigarettes are sold to wholesalers and distributors, additional costs, such as state-specific taxes and profit margins are applied by these market intermediaries, before the retail price to the end consumer is set by the retailer at the point of sale.

13.     By and through distributors and retailers, Liggett and Vector currently sell large volumes of discount brand cigarettes in Colorado at average retail prices between $3.80 and $5.40 per pack generating millions of dollars of annual sales. Tens of millions of Liggett and Vector cigarettes are sold each year in Colorado that constitute millions of dollars of annual sales for Liggett and Vector. In 2019, Liggett and Vector discount brand cigarette sales in Colorado generated approximately $50 million in sales revenue for the two companies. From 2018 to the present time, sales of Liggett and Vector discount brand cigarettes have consistently been more than 10% of the Colorado cigarette market.

14. Currently, Liggett's discount brand Pyramid is sold in Colorado at an average retail price of $5.28 per pack. While other Liggett cigarette brands are sold in Colorado, the Pyramid brand constitutes over 98% of Liggett cigarettes sold in the State.

15. Currently, Vector's discount brand Eagle 20's is sold in Colorado at an average retail price of $4.59 per pack.

16. By comparison, premium brand cigarettes in Colorado, such as Philip Morris's Marlboro brand currently typically sell at an average retail price of between $6.50 and $7.50 per pack.

17. I understand that voters in Colorado recently approved Proposition EE, which imposes a Colorado cigarette excise tax increase of $1.10 per pack, effective January 1, 2021. I also understand that Proposition EE imposes a $7.00 per pack minimum retail price for all cigarettes sold in Colorado (the "Minimum Price Law"), also effective January 1, 2021.

18. Part of my job is to learn and assess the competitive and regulatory landscape of the domestic cigarette market, including the impact of state taxes and price regulation on cigarette sales. To the best of my knowledge, Colorado's Minimum Price Law is unique insofar as no other state has sought to raise the price of cigarettes by imposing a fixed, minimum retail price law. Most states that have sought to raise cigarette prices have done so by raising excise taxes or through "minimum mark-up laws," both of which preserve relative price differences between cigarette brands and maintain fair market competition. Unlike Colorado's Minimum Price Law, which sets a fixed minimum retail price, a minimum mark-up law imposes percentage increases on the wholesale and retail price of cigarettes. The effect of the minimum mark-up laws is to raise the price of all cigarettes and maintain relative price differences between brands. About half the states

6

have enacted minimum mark-up laws. Similarly, excise taxes, like Colorado's own cigarette tax, apply a fixed tax per cigarette, pack or carton, also raising the price of all cigarettes equally and maintaining relative price differences between brands. Thus, under either minimum mark-up laws or excise taxes, discount brands and their manufacturers such as Liggett and Vector remain able to compete.

19. Colorado's Minimum Price Law is anticompetitive and will make it virtually impossible for discount cigarette manufacturers, including Liggett and Vector, to compete in the Colorado cigarette market. The Minimum Price Law, if enforced, will impose much greater price increases on discount cigarettes than on premium cigarettes, thus causing irreparable harm to Liggett, Vector and other discount tobacco manufacturers, while leaving premium cigarettes manufacturers largely unaffected. As of January 1, 2021, the retail price of all cigarettes in Colorado will rise by virtue of the new Colorado cigarette tax increase of $1.10 per pack. The retail prices of premium brand cigarettes in Colorado will be essentially unaffected by the Minimum Price Law because the state cigarette tax increase of $1.10 per pack will by itself increase current retail prices of premium brands in Colorado to or above the $7.00 minimum. However, Colorado's Minimum Price Law will increase the retail price of discount brand cigarettes in Colorado in excess of the $1.10 cigarette tax increase. By disproportionately raising the retail price of discount brand cigarettes in Colorado to premium price levels, the Minimum Price Law will substantially reduce or eliminate the ability of Liggett, Vector and other discount cigarette manufacturers to compete in the Colorado cigarette market based on price. As a result, sales of Liggett and Vector discount cigarettes will decline dramatically in Colorado beginning in January 2021, and the two companies will lose millions of dollars of sales in the Colorado market

beginning in the first quarter of 2021. If the Minimum Price Law becomes effective, Liggett and Vector will lose tens of millions of dollars in annual sales and will lose substantial market share in the Colorado cigarette market.

20. The Minimum Price Law will reduce or eliminate the current retail price differences between discount brand and premium brand cigarettes in Colorado and thus inhibit the ability of discount cigarette manufacturers, including Liggett and Vector, to compete in the Colorado cigarette market. When cigarette prices go up, as they will in Colorado in January 2021 by virtue of the tax increase, many smokers switch from more expensive to lower priced brands. The effect of the Minimum Price Law will reduce consumers from switching from more expensive premium brand cigarettes to lower priced discount brand cigarettes. The Minimum Price Law will also cause current or potential discount brand customers, who see no material price savings in discount brands, to elect to buy premium brand cigarettes instead. Additionally, the Minimum Price Law will inhibit the ability of discount brand manufacturers to compete against each other by eliminating price differences between their respective discount brands.

21. The Minimum Price Law will cause discount brand manufacturers, including Liggett and Vector to lose sales, profits and market share. Colorado consumers who elect to smoke premium brands will have less incentive to switch to what had been, but no longer will be, less expensive discount brand cigarettes, even when confronted with the current substantial cigarette tax increase. Current consumers of discount cigarettes, who elected to purchase discount products in order to save money, will no longer have an economic incentive to remain customers of discount products. The increased consumer costs imposed by the new law will thus disproportionately fall on discount brand consumers, who will bear the burden of both the $1.10 tax plus the additional,

substantial non-tax increase resulting from the fixed Minimum Price Law. If permitted to go into effect on January 1, 2021, the Minimum Price Law will reduce demand for discount cigarette products disproportionately compared to premium cigarette products. As a result, Liggett and Vector will lose customers, sales and market share in Colorado. Once customers, sales, and market share decline, it is virtually impossible under current conditions for the companies to get it back.

22. The Minimum Price Law will affect Colorado retailers differently than discount cigarette manufacturers. By eliminating price competition, the Minimum Price Law prevents Colorado cigarette retailers from losing sales on more expensive premium brand cigarettes by eliminating the price incentive for Colorado consumers to switch to discount brand cigarettes. Many Colorado retailers have business relationships with premium brand manufacturers, including Philip Morris and R.J. Reynolds, which make it more profitable for them to sell premium brand cigarettes. Moreover, the legally mandated higher price on discount brand cigarettes increases the profit margin for those products at the point of sale, subsidizing Colorado retailers who continue to sell them. While revenue generated by the Colorado cigarette tax increase will go to the State, the additional proceeds generated on discount cigarettes as a result of the Minimum Price Law (*i.e.,* the increase in excess of the cigarette tax) will be collected at the point of sale and will go directly to Colorado retailers. Thus, to the extent that Colorado customers purchase discount brands at the $7.00 mandated price, the proceeds generated in excess of the $1.10 cigarette tax (between $0.50-$2.10 per pack) go neither to Colorado nor to tobacco manufacturers, but directly to the Colorado in-state retailers who sell them. The practical effect of the Minimum Price Law will be to drive down demand for discount products, to the detriment of discount cigarette

manufacturers, but Colorado retailers can make more money on wider margins selling fewer discount brand cigarettes.

23.     If the Minimum Price Law becomes effective on January 1, 2021, it will cause immediate, irreparable economic harm to Liggett and Vector.  The Minimum Price Law will reduce demand for Liggett and Vector discount cigarettes and make it virtually impossible for the companies to compete.  If the Minimum Price Law is permitted to go into effect, and remain in effect during the pendency of this lawsuit, Liggett and Vector will lose customers, market share, and millions of dollars of annual sales revenue and profits.  Liggett and Vector will be unable to recover these losses if they prevail in the lawsuit.

I declare under penalty of perjury that the above is true and correct, and that I executed this declaration this 19th day of November 2020.

_____
Steven D. Shipe

11