# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03107-RM-KLM

JENNIFER ANN SMITH, et al.,

     Plaintiffs,

v.

STATE OF COLORADO, et al.,

     Defendants.

---

## DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(1) AND 12(b)(6)

## INTRODUCTION

In 2020, Colorado's voters approved a referred measure from the Colorado General Assembly, which, among other things, will increase the price of cigarettes throughout the State of Colorado. One part of that legislation ("Section 10") sets a minimum price for all cigarettes sold to consumers in Colorado regardless of where they are made.

The plaintiffs, Smith and three cigarette makers (Liggett Group LLC, Vector Tobacco Inc., and Xcaliber International Ltd., LLC (collectively, the "Cigarette Manufacturers")), allege Section 10 violates the federal dormant Commerce Clause and is void under certain state laws. The Court should dismiss all of these claims.

First, regarding the dormant Commerce Clause, their Amended Complaint (1) fails to plausibly allege that Section 10 gives an in-state business an advantage over its substantially similar out-of-state competitors (i.e., discriminates against interstate commerce); (2) fails to

plausibly allege an undue burden on interstate commerce because it admits that Section 10 will leave other, competing cigarette makers unaffected; and (3) fails to—and cannot, as a matter of law—allege that Section 10 ties prices in Colorado to prices in other States as is required to state a claim for impermissible extraterritorial impact under the dormant Commerce Clause. Thus, the Court should dismiss the dormant Commerce Clause claims for failure to state a claim for relief.

Second, the Court should also dismiss the state-law claims because the Eleventh Amendment prevents the Court from exercising subject-matter jurisdiction over them. The Cigarette Manufacturers and Smith are asking a federal court to evaluate Colorado's compliance with Colorado law. Based on those alleged violations of state law, they are then asking the Court to stop Colorado from enforcing Section 10. The Eleventh Amendment generally bars suits against unconsenting states in federal court, including claims that state officials violated state law. Because Colorado has not consented to this Court adjudicating the *state*-law claims, the Court should dismiss them.

For these reasons, the Court should dismiss the Amended Complaint in its entirety. If any part of this suit is allowed to proceed, however, the only proper defendant is the Colorado Department of Revenue's Executive Director, in her official capacity. The Court should dismiss the remaining defendants for lack of jurisdiction under the Eleventh Amendment.

**D.C. Colo. L. Civ. R. Rule 7.1(A) Statement:** The issues presented in this motion are substantially similar to issues the parties' counsel have previously discussed in the context of the pending preliminary injunction motion and related discovery and on which they have been unable to reach agreement, with the possible recent exception of the dismissal of Count Two for

lack of subject matter jurisdiction.[1] Undersigned counsel also reached out to Plaintiffs' counsel early this afternoon to determine if further conferrals would be productive and offered to meet to discuss the motion at a mutually convenient time later today. No response was received prior to the filing of this motion.

### THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE DORMANT COMMERCE CLAUSE

The Court should dismiss the dormant Commerce Clause claims (Count One) because the facts alleged—even when accepted as true for purposes of this motion—fail to state a claim for relief which may be granted. *See* Fed. R. Civ. P. 12(b)(6).

## I.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept a complaint's factual allegations as true and interpret them in the light most favorable to the non-moving party, legal conclusions in the complaint should be disregarded. *Id.*

---

[1] In their preliminary injunction reply brief (CM/ECF No. 48), filed yesterday, the Cigarette Manufacturers and Smith indicate they will withdraw Count Two. Reply In Further Support of Pls.' Mot. for Preliminary Injunction at 4 n.1. Once Count Two is dismissed, this motion's request that it be dismissed for lack of subject-matter jurisdiction will be moot. That withdrawal will not, however, moot the Eleventh Amendment issue regarding the proper parties to this action.

II.     **The Relevant Allegations in the Complaint**

The Cigarette Manufacturers[2] allege the following facts in support of their dormant

Commerce Clause claims:

1.  The Cigarette Manufacturers are out-of-state companies with no physical presence in
    Colorado that make cigarettes and sell them to consumers in Colorado through
    distributors and retailers. *Id.* ¶¶ 19-22 & 96.

2.  The Cigarette Manufacturers compete against other cigarette manufacturers "almost
    exclusively on price" and must do so "vigorously to maintain their presence in national
    and state markets dominated by Philip Morris and other premium manufacturers." *Id.*
    ¶¶ 26-27. The Cigarette Manufacturers never allege that any of these other manufacturers
    are located in Colorado.

3.  Section 10 will benefit in-state retailers because they will be able to keep "the non-tax
    portion of the higher cigarette prices resulting from Section 10." *Id.*  ¶ 29.

4.  "Philip Morris and other premium cigarette sellers … "will not be affected by the Section
    10 portion of the [price] increase because their products already sell near or above the
    Section 10 minimum price." *Id.* ¶ 30.

5.  Section 10's required minimum price "will severely interfere with the ability of the
    Manufacturer Plaintiffs to compete, causing them to lose sales and profits and benefitting
    Philip Morris, which will gain market share at the Manufacturer Plaintiffs' expense." *Id.*

---

[2] Because the dormant Commerce Clause claims focus on the Cigarette Manufacturers, *see* Am.
Compl. ¶¶ 96-100, they appear to be specific to them.

¶ 34. "The ultimate result will be to drive most, if not all, discount cigarettes from the Colorado market." *Id.*

6. Section 10 "serves the interest of premium brand cigarette manufacturers by artificially raising the price of discount brand cigarettes to premium price levels, eliminating price competition in favor of premium brand sellers." *Id.* ¶ 87.

Even with the forgiving standards applicable on a motion to dismiss, these allegations fail to state a dormant Commerce Clause claim.

**III.   Section 10 does not violate the dormant Commerce Clause: it does not discriminate against interstate commerce; it does not unduly burden interstate commerce; and it does not have an impermissible extraterritorial effect.**

The dormant Commerce Clause is a judicial doctrine that limits "state regulation of interstate commerce." *Dir. Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1135 (10th Cir. 2016). The question in any dormant Commerce Clause case is "whether a state law improperly interferes with interstate commerce. The primary concern is economic protectionism." *Id.*

The Tenth Circuit has recognized three ways a state regulation may violate the dormant Commerce Clause: (1) by discriminating against interstate commerce (i.e., favoring an in-state business over its out-of-state competitors); (2) by unduly burdening interstate commerce under the balancing test from *Pike v. Bruce Church Inc.*, 397 U.S. 137 (1970); and (3) by asserting extraterritorial control over commerce occurring "entirely outside the boundaries" of the State. *KT & G Corp. v. Att'y Gen.*, 535 F.3d 1114, 1143 (10th Cir. 2008) (quoting *Grand River Enters. Six Nations Ltd. v. Pryor*, 425 F.3d 158, 168 (2d Cir. 2005)); *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298-99 (1997) (regarding competition requirement).

The Cigarette Manufacturers argue that Section 10 violates each of these tests. They are incorrect. The Court should dismiss Count One.

**1. The Cigarette Manufacturers fail to state a claim for discrimination against interstate commerce because they do not allege that Section 10 gives an substantially similar in-state business with whom the Cigarette Manufacturers compete an unfair competitive advantage.**

The fundamental characteristic of a claim that a State has unconstitutionally discriminated against interstate commerce is giving an in-state business an unfair advantage over a "substantially similar" out-of-state competitor. *Tracy*, 519 U.S. at 298-99. The Supreme Court has recognized that "any notion of discrimination assumes a comparison of substantially similar entities." *Id.* at 299.  "Thus, in the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market[,] there can be no local preference, whether by express discrimination against interstate commerce or undue burden upon it, to which the dormant Commerce Clause may apply." *Id.* at 300.[3]

The Tenth Circuit has similarly noted that the result of any alleged discrimination "must 'alter[ ] the competitive balance between in-state and out of-state firms." *Dir. Mktg. Ass'n*, 814 F.3d at 1142 (quoting *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1041 (10th Cir. 2009)). And consistent with that case law, the Second Circuit Court of Appeals expressly rejected a discrimination claim because the plaintiffs there failed to "identify any in-state commercial interest that [was] favored, directly or indirectly, by the [challenged s]tatutes *at the expense of out-of-state competitors*." *Grand River Enters.*, 425 F.3d at 169 (emphasis added) (quoting

---

[3] While the competition requirement has gone unspoken in many of the Court's discrimination cases, it remains a fundamental assumption underlying them. *Tracy*, 519 U.S. at 298-99.

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 218 (2d Cir. 2004) (alterations as in *Grand River*)).

Section 10 does not give any in-state business an advantage over its substantially similar out-of-state competitors, and the Cigarette Manufacturers do not argue otherwise. For starters, the Cigarette Manufacturers have not even alleged that any Colorado competitor exists. Even if a Colorado cigarette manufacturer did exist, on its face, Section 10 even-handedly requires a consumer buying cigarettes in Colorado to pay at least $7.00 for a pack of cigarettes regardless of where they come from. If they come from an out-of-state manufacturer (like the Cigarette Manufacturers here), the consumer must pay at least $7.00 for them. If they come from an in-state manufacturer, the consumer must still pay at least $7.00 for them.

Despite Section 10's equal treatment of in-state (if they existed) and out-of-state cigarettes, the Cigarette Manufacturers allege that Section 10 discriminates against interstate commerce because Section 10 will benefit in-state retailers. Am. Compl. ¶ 97. This argument misses the mark. To make this claim viable, the Cigarette Manufacturers needed to allege facts plausibly showing that retailers are substantially similar to the Cigarette Manufacturers and that cigarette retailers (who sell directly to individual consumers) compete with national manufacturers like the Cigarette Manufacturers (who sell to distributors and retailers). *See Tracy*, 519 U.S. at 298-99. They have not done so. Indeed, far from alleging the in-state retailers are substantially similar competitors, the Cigarette Manufacturers' allegations demonstrate that retailers play a distinct and complimentary role in the distribution chain and retail sale of cigarettes. Am. Compl. ¶¶ 12-14, 19. This forecloses any allegation that the Cigarette Manufacturers and the retailers are substantially similar competitors.

7

Thus, the in-state retailers are an improper foil for the Cigarette Manufacturers' discrimination claim. As *Tracy* makes clear, the fact that *some* in-state entity might benefit is not the relevant test. *Tracy*, 519 U.S. at 298-300. The question is whether the challenged law gives in-state businesses an advantage over their substantially similar out-of-state competitors. *Id.; see also Dir. Mktg. Ass'n*, 814 F.3d at 1142. Nothing in the Cigarette Manufacturers' assertions plausibly alleges that is the case here, meaning the Court should dismiss the discrimination claim.

> **2.   The Amended Complaint fails to state an undue burden claim under existing case law, and the particularized harm that will allegedly befall the Cigarette Manufacturers—but not other cigarette makers—is insufficient to show an undue burden on interstate commerce as a whole.**

Section 10 also does not impose an undue burden on interstate commerce. The Supreme Court has already held that a minimum price law that uses a fixed price—such as Section 10— does not unduly burden interstate commerce. *Highland Farms Dairy v. Agnew*, 300 U.S. 608, 614-16 (1937). In *Agnew*, Virginia set a minimum price for milk sold at retail inside certain market areas within the state, requiring retailers to raise their prices. *Id.* at 609-10. An out-of-state creamery that sold bottled milk to an in-state retailer challenged the law as an undue burden on interstate commerce. *Id.* at 610.

The Court rejected that argument. *See id.* at 614-15. The out-of-state distributor was not subject to the minimum retail price law and could sell to the retailer "at any price they please." Virginia's minimum price law "[did] not lay a burden on interstate commerce." *Id.* at 614.

Section 10 is no different with respect to the Cigarette Manufacturers. Section 10 does not require them to sell their cigarettes to retailers at any particular price. Nothing in Section 10 governs the transaction between the Cigarette Manufacturers and the retailers and distributors to

whom they sell cigarettes. Section 10 is only triggered when a retailer sells cigarettes to a Colorado consumer. Section 10 in no way burdens the interstate transactions in which the Cigarette Manufacturers engage.

More recent case law further confirms that the Cigarette Manufacturers failed to adequately allege an undue burden on interstate commerce.[4] The essential problem with the Cigarette Manufacturers' claim is that it is based on particularized harms that will allegedly befall them, not on interstate commerce as a whole. Am. Compl. ¶¶ 30, 98 (alleging a benefit to other out-of-state manufactures but loss of the Cigarette Manufacturers' market share in Colorado"). The Cigarette Manufacturers' suggestion that they and other discount cigarette makers will be unable to sell their products in Colorado is not enough.

This is because the dormant Commerce Clause "protects the interstate market, ***not particular interstate firms***, from prohibitive or burdensome regulations." *Exxon Corp. v. Gov. of Md.*, 437 U.S. 117, 127-28 (1978) (emphasis added); *see also Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1309 (10th Cir. 2008) (quoting *Exxon Corp.*, 437 U.S. at 127-28)). Consistent with that principle, the Supreme Court has held that "interstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some business to shift from one interstate supplier to another." *Id.* at 127. And as other circuits have noted, "'[T]he fact that a law may have devastating economic consequences on a particular interstate firm is not sufficient to rise to a Commerce Clause burden.'" *Pharm. Research & Mfrs. v. Concannon*, 249

---

[4] Because the Cigarette Manufacturers have failed to identify a burden on interstate commerce, there is no need to apply the balancing test from *Pike v. Bruce Church Inc.*, 397 U.S. 137 (1970).

F.3d 66, 84 (1st Cir. 2001) (quoting *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 35

F.3d 813, 827 (3d Cir. 1994)), *cited with approval in Quik Payday, Inc.*, 549 F.3d at 1309.

Yet, that is all that the Cigarette Manufacturers allege: negative consequences for them

without showing an impact on the interstate market as a whole. Indeed, the Cigarette

Manufacturers assert that other cigarette makers—with whom they compete—will still sell

cigarettes in Colorado and either "will not be affected by Section 10" or will actually benefit

from it. Am. Compl. ¶¶ 19, 30, 34. These allegations demonstrate that Section 10 will not unduly

burden interstate commerce. If these allegations are true, Section 10 may harm these particular

plaintiffs, but that is not enough to give rise to a violation of the dormant Commerce Clause.

Thus, the Court should dismiss the undue burden claim because the Cigarette Manufacturers

have failed to plausibly allege that Section 10 imposes an undue burden on interstate commerce.

### 3. The Cigarette Manufacturers' general allegations of extraterritorial impacts are insufficient to support a violation of the dormant Commerce Clause.

Finally, the Cigarette Manufacturers assert that Section 10 impermissibly exerts

extraterritorial control over interstate commerce by "undermin[ing] the long-standing regime for

the regulation, sale, and pricing of cigarettes throughout the United States." Am. Compl. ¶ 99.

But the extraterritoriality test is very narrow. *Energy & Env't. Legal Inst. v. Epel*, 793 F.3d 1169,

1172 (10th Cir. 2015). The "essential characteristics" of a law that has an impermissible

extraterritorial effect are: "(1) [the regulation] is a price control or price affirmation regulation;

(2) linking in-state prices to those charged elsewhere, with (3) the effect of raising costs for out-

of-state consumers or rival businesses." *Id.* at 1173; *see also Dir. Mktg. Ass'n*, 814 F.3d at 1136

n.11 (making clear that *Epel* recognized "a third type of dormant Commerce Clause case[ ]").

The Cigarette Manufacturers' fail to recognize the limitations of the extraterritoriality test and the test's necessary elements. Quite simply, there is no argument that Section 10 "link[s] in-state prices to those charged elsewhere," and the Cigarette Manufacturers do not attempt to make one. By its plain language, Section 10's $7.00 minimum, per-pack price has no relation to prices charged anywhere else. Thus, Section 10 does not violate the extraterritoriality test, and the Court should dismiss that claim.

## THE ELEVENTH AMENDMENT PROHIBITS THE COURT FROM EXERCISING JURISDICTION OVER THE STATE-LAW CLAIMS[5]

The Cigarette Manufacturers and Smith assert that the Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Am. Compl. ¶ 8. But section 1331 applies only to federal questions, not state-law claims like those in Count Two. *See* Am. Compl. ¶¶ 102-10. And the Eleventh Amendment overrides the grant of supplemental jurisdiction contained in section 1367. Therefore, Count Two must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

## I.    Standard of Review

A challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "A facial attack on the complaint's allegations as to subject matter jurisdiction

---

[5] As noted above, *see* n.1, the Cigarette Manufacturers and Smith have indicated they intend to withdraw Count 2, and therefore, this issue may become moot.

questions the sufficiency of the complaint." *Id.* The Court must accept the factual allegations in the complaint as true for purposes of the motion to dismiss. *Id.*[6]

## II.    Relevant Allegations in the Complaint

The Cigarette Manufacturers and Smith assert that jurisdiction is proper here under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Am. Compl. ¶ 8.

## III.    The Court lacks subject-matter jurisdiction over the state-law claims under the Eleventh Amendment.

Neither of the two statutes the Cigarette Manufacturers cite give the Court jurisdiction over the state-law claims at issue here. Section 1331 only grants the Court jurisdiction over questions arising under federal law. Count Two does not involve questions arising under federal law, making it inapplicable.

The other asserted jurisdictional basis, 28 U.S.C. § 1367, allows federal district courts to exercise jurisdiction over claims that are sufficiently related to other claims in the same suit over which the court does have original jurisdiction. But section 1367 does not override the States' Eleventh Amendment immunity from suits brought against them in federal court. *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-42 (2002). Thus, the relevant question here is whether the Eleventh Amendment prohibits this Court from exercising subject-matter jurisdiction over the state-law claims.

It does. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Employees*

---

[6] The State disputes that any violation of state law occurred here, as Count Two alleges. But the merits of those claims are irrelevant to the jurisdictional question presented here.

*of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973) (discussing U.S. CONST., amend. XI). Thus, unless Congress has overridden state immunity (which it has not done here), Eleventh Amendment immunity applies where (1) the suit is against the State of Colorado; and (2) the State has not consented to the suit.

This suit is unquestionably against the State of Colorado for Eleventh Amendment purposes. The defendants are the State of Colorado, by and through the Governor, in his official capacity; Colorado's Attorney General, in his official capacity; and the Colorado Department of Revenue's Interim Executive Director, in her official capacity. Suits against state officials, in their official capacities are "'no different than a suit against the State itself.'" *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). And ultimately, the ruling the Cigarette Manufacturers and Smith seek—that Section 10 cannot be enforced because of certain violations of state law— "'would operate against [the State].'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). There can be no question that the state-law claims are asserted against the State.

On the second requirement, the State has not consented to having these state-law claims heard in federal court. And the Cigarette Manufacturers and Smith have not identified any action by the State or its officials that waives the State's sovereign immunity here.

*Ex Parte Young*, 209 U.S. 123 (1908), does not overcome the State's immunity here. *Ex Parte Young* is an exception to the Eleventh Amendment that allows select *federal* claims (like the Cigarette Manufacturers' dormant Commerce Clause claims) to bypass the Eleventh Amendment when brought against a state official charged with "a particular duty to 'enforce' the

statute in question and a demonstrated willingness to exercise that duty." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (quoting *Ex Parte Young*, 209 U.S. at 157).

*Ex Parte Young* does not provide the Court with jurisdiction over the *state*-law claims. "[T]he Eleventh Amendment bars suits brought in federal court seeking to enjoin a state official from violating state law." *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995). Thus, while the Supreme Court has held that *Ex Parte Young* permits challenges based on federal law that seek prospective injunctive relief against certain state officials, the Supreme Court has also held that the doctrine does not apply to state-law claims, such as those alleged in Count Two. *See Pennhurst*, 465 U.S. at 102-03, 106, 121 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

Thus, this Court does not have subject-matter jurisdiction over the state-law claims that make up Count Two and should dismiss them for lack of subject-matter jurisdiction.

## THE COURT SHOULD DISMISS ALL OF THE DEFENDANTS OTHER THAN THE DEPARTMENT OF REVENUE'S EXECUTIVE DIRECTOR IF ANY CLAIMS ARE ALLOWED TO PROCEED.

This matter should be dismissed in its entirety. But if the Court permits any part of it to proceed, it should only proceed against the Colorado Department of Revenue's Executive Director, in her official capacity, because she is the state official charged with enforcing Section 10, making jurisdiction as to the dormant Commerce Clause claims proper under *Ex Parte Young*. *See Prairie Band Potawatomi Nation*, 476 F.3d at 828. The remaining defendants should be dismissed for lack of subject matter jurisdiction.

## I.    Standard of Review

The issue here is again one of subject matter jurisdiction. As before, "[a] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Holt*, 46 F.3d at 1002. The Court must accept the factual allegations in the complaint as true for purposes of the motion to dismiss. *Id.*

## II.    Relevant Allegations in the Complaint

The Cigarette Manufacturers and Smith name the following defendants: the State of Colorado, by and through Governor Jared Polis, in his official capacity; Colorado Attorney General Philip Weiser, in his official capacity; and Colorado Department of Revenue Interim Executive Director Heidi Humphreys, in her official capacity. Regarding the Governor, they allege that he "has the power to enforce the laws of the State of Colorado and is required by the Colorado Constitution to ensure that all laws of the state are faithfully executed." Am. Compl. ¶ 16. Similarly, regarding the Attorney General, they allege, "he serves as the legal advisor of the Colorado Department of Revenue …, and is responsible for bringing civil actions to enforce state laws … and has the ability to bring advisory and other actions when the State passes an unconstitutional law." *Id.* ¶ 17.

## III.    Even if the Amended Complaint does state a claim for relief over which the Court has jurisdiction, that claim can only properly be brought against the Executive Director of the Department of Revenue because she is the only named state official specifically charged with enforcing Section 10.

The Eleventh Amendment bars this suit from proceeding against all of the named defendants other than Executive Director Humphreys, in her official capacity. First, the State is immune under the Eleventh Amendment because the Eleventh Amendment specifically prohibits

suits against the States. *See* U.S. CONST. amend XI. Nothing in the Amended Complaint points to an exception that would abrogate the State's sovereign immunity under the Eleventh Amendment such that it would be a proper defendant here.

Second, the other state defendants are also immune under the Eleventh Amendment. State officials are entitled to Eleventh Amendment immunity when the suit against them "is in fact a suit against the State." *Pennhurst*, 465 U.S. at 102. For the same reasons as those discussed above regarding the Eleventh Amendment barring Count Two, this suit is a suit against the State.

As discussed above, however, the Supreme Court has recognized an exception to Eleventh Amendment immunity to allow suits "challenging the constitutionality of a state official's actions." *Pennhurst*, 465 U.S. at 101 (discussing *Ex Parte Young*, 209 U.S. 123 (1908)). But that exception comes with an important qualification, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex Parte Young*, 209 U.S. at 157.

A general duty to enforce the law is not sufficient. As the Supreme Court recognized even prior to *Ex Parte Young*, permitting suits against governors because the are "charged with the execution of all of [their States'] laws" and against attorneys general because they "might represent the state in litigation involving the enforcement of [their States'] statutes" is inconsistent with Eleventh Amendment immunity. *Fitts v. McGhee*, 172 U.S. 516, 530 (1899), *quoted with approval in Ex Parte Young*, 209 U.S. at 157; *see also Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) ("The required 'connection' is not 'merely the general duty to see

16

that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." (Quoting *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001)).

The rule is no different in this Circuit. To deprive a state official of immunity under *Ex Parte Young*, that official must have "a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Prairie Band Potawatomi Nation*, 476 F.3d at 828 (quoting *Ex Parte Young*, 209 U.S. at 157); *see also Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013).

The Cigarette Manufacturers and Smith fail to allege that the Governor and the Attorney General have a "particular duty" to enforce Section 10 or a demonstrated willingness to exercise that duty, such that they should lose their Eleventh Amendment immunity under *Ex Parte Young*. Instead, they cite each official's general obligation to enforce the laws (for the Governor, Am. Compl. ¶ 16) and to advise the Department of Revenue and bring civil actions to enforce state laws (for the Attorney General, *id.* at  ¶ 17. And they make no allegations regarding a demonstrated willingness on the part of either the Governor or the Attorney General to exercise their enforcement authority, such as by alleging another state law that gives them specific authority, "an administrative delegation, or a demonstrated practice of enforcing [this] provision." *See Peterson*, 707 F.3d at 1207.

In sum, the allegations fail to create a sufficient link between the Governor and the Attorney General and the enforcement of Section 10 to give this Court jurisdiction over the claims asserted against them under *Ex Parte Young*. Indeed, as a matter of law, the Colorado Department of Revenue's Executive Director is primarily responsible for enforcing the

provisions of Colorado's cigarette tax, COLO. REV. STAT. §§ 39-28-101, et seq., which is where

Section 10 will be codified. *See* COLO. REV. STAT. § 39-28-107(1)(b) (appropriating money for

the Department's enforcement of Colorado's cigarette tax); H.B. 20-1427, 72d Gen. Assem., 2d

Reg. Sess. (Colo. 2020), § 10 (noting it will be codified at COLO. REV. STAT. § 39-28-116). As

such, while she is a proper party in her official capacity, the remaining defendants are entitled to

Eleventh Amendment immunity, and all of the claims asserted against them should be dismissed.

## CONCLUSION

The Court should dismiss the Amended Complaint. The Cigarette Manufacturers and

Smith have failed to state a plausible claim for relief under the dormant Commerce Clause, and

the Eleventh Amendment deprives the Court of subject-matter jurisdiction over the state-law

claims. In the alternative, if any claims remain following the resolution of this motion, all of the

defendants other than the Department of Revenue's Executive Director, in her official capacity,

should be dismissed from this suit for lack of jurisdiction under the Eleventh Amendment.

Respectfully submitted this 15th day of December, 2020.

PHILIP J. WEISER
Attorney General

/s/ *Russell D. Johnson*
**Russell D. Johnson**\*
Senior Assistant Attorney General
1300 Broadway, 8th Floor
Denver, CO 80203
Telephone: 720-508-6351
Email: russell.johnson@coag.gov
Attorney for the Defendants.
\*Counsel of Record

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing **Defendants' Motion to Dismiss Under F.R.C.P.**

**12(b)(1) and 12(b)(6)** upon all parties herein by e-filing with the CM/ECF system maintained by

the Court, this 15th day of December, 2020, addressed as follows:

Marc E. Kasowitz
Daniel R. Benson
Leonard A. Feiwus
Deva Roberts
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019

Maria Gorecki
KASOWITZ BENSON TORRES LLP
1400 16th Street
16 Market Square, Suite 400
Denver, CO 80202
Jon Anderson
MAVEN LAW GROUP
1800 Glenarm Place, Suite 950
Denver, CO 80202

E. Job Seese
Katarzyna A. Parecki
Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.
1600 Stout Street, Suite 1100
Denver, CO 80202

/s/ *Russell D. Johnson*
***Russell D. Johnson***