IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-CV-03107-RM-KLM

JENNIFER ANN SMITH, et al.

    Plaintiffs,

v.

STATE OF COLORADO, et al.,

    Defendants.

## INTERVENORS-DEFENDANTS MOTION FOR PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), proposed intervenors Representatives Julie McCluskie and Yadira Caraveo, members of the House of Representatives of the Colorado General Assembly (the "Representatives") respectfully request that the Court enter a protective order prohibiting Plaintiffs Jennifer Ann Smith, Liggett Group LLC, Vector Tobacco Inc., and XCaliber International LTD., LLC (collectively, "Plaintiffs") from discovering privileged documents that are in the possession of Defendants (the "State"). In support of their motion, the Representatives state as follows:

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to D.C.COLO.LCivR 7.1(a), counsel for the Representatives conferred with counsel for Plaintiffs by telephone and email on December 17–18, 2020. Plaintiffs oppose the Representatives' Motion. Counsel for Representatives also conferred with counsel for the State by telephone and email on December 17–18, 2020. The State does not oppose the

1

Representatives' Motion or the relief sought herein, but takes no position on the merits of the Motion.

**INTRODUCTION**

Plaintiffs have requested the production of documents by the State as part of discovery requests served pursuant to this Court's December 3, 2020 Order regarding expedited discovery for the upcoming preliminary injunction hearing in this matter set for December 21, 2020. The documents requested by Plaintiffs include six emails/email strings, two drafts of proposed legislation attached thereto, and one document reflecting legal research, each of which is in the possession of the State and is protected from disclosure by the constitutional and statutory legislative immunity/privilege and the work product doctrine applicable to documents related to the drafting and passage of legislation. The Representatives have informed Plaintiffs that these documents are protected and not subject to disclosure, but Plaintiffs have nonetheless requested that the State produce them. Accordingly, the Representatives have requested permission to intervene to seek a protective order prohibiting the disclosure of these documents to Plaintiffs.

Representatives Julie McCluskie and Yadira Caraveo are members of the Colorado House of Representatives. They were the prime House sponsors of House Bill 20-1427 (the "Bill"), the legislation at issue in this litigation. In the spring of this year, they enlisted their attorneys in the Office of Legislative Legal Services ("OLLS") to help draft the Bill. OLLS is the non-partisan, in-house counsel for the Colorado General Assembly with statutory authority to help members draft legislation, among other responsibilities.

Pursuant to the request from the Representatives, OLLS staff members prepared the Bill. As part of that process, they prepared drafts of the Bill and communicated about the Bill with

2

persons directly involved in the legislative process for the Bill but outside the Representatives' respective offices. The Representatives now move this Court for a protective order to prevent two drafts of the Bill, legal research conducted in furtherance of drafting the Bill, and related communications to and from the Representatives, OLLS, members of the Governor's office and two other individuals directly involved in the drafting and passage of the Bill from being discovered by Plaintiffs. The documents are not discoverable for the following reasons:

*First*, the documents are protected from disclosure by legislative immunity. Under Colorado law, which applies here, legislative immunity shields state legislators from pretrial discovery, and this immunity is absolute.

*Second*, the documents are protected by the work product doctrine. Under C.R.S. § 2-3-505(2)(b), documents prepared or assembled in response to a request for a bill are work product that is protected from disclosure. That applies to both the drafts of the Bill and related communications, which were created in response to the Representatives' request for help preparing the Bill.

*Third*, even if federal law were to apply, the documents would be protected from disclosure under the qualified legislative privilege and the deliberative process privilege. Both doctrines safeguard internal legislative processes from disclosure, precisely what Plaintiffs seek to abridge here.

*Fourth*, none of these privileges was waived by disclosure of the documents to the Governor's office or other interested parties. Because each of those parties shared a common interest with the Representatives and OLLS—drafting and, in the case of the parties other than

3

OLLS, passing the Bill—the disclosures are protected by the common interest doctrine and there was no waiver.

Accordingly, the Representatives respectfully request that the Court enter a protective order prohibiting Plaintiffs from discovering the privileged documents.[1]

## BACKGROUND

**I.      Plaintiffs Seek Documents In This Suit From The State**

Plaintiffs filed their Complaint in this action on October 15, 2020, in which they alleged that Section 10 of the Bill violates both the federal and Colorado constitutions.  After amending their Complaint,[2] Plaintiffs moved for a preliminary injunction to enjoin enforcement of Section 10 (Dkt. 13.) and sought expedited discovery from the State in advance of the PI hearing set for December 21, 2020.  (Dkt. 34.)  The Court granted Plaintiffs' request for expedited discovery in part, including for "communications concerning Section 10 [of the Bill] between and among Defendants, Philip Morris, its parent Altria and/or any members of the general assembly, including any agents of the foregoing."  (Dkt. 38 at 3.)

On December 15, 2020, the State produced documents responsive to Plaintiffs' discovery requests.  In its objections to the requests, however, the State noted that it was withholding a limited number of documents, nine (9) altogether, within its custody that contained

---

[1] If it would aid the Court, the Representatives would agree to tender the documents at issue for *in camera* inspection.

[2] Plaintiffs initially named the Legislative Council of the Colorado General Assembly, one of the General Assembly's committees, as a defendant. (Dkt. 1.)  The Legislative Council was not named as a defendant in the Amended Complaint, however.  (*See* Dkt. 11.)

4

communications with and work product from OLLS, the Representatives, the Governor's office and others involved in the drafting and passage of the Bill. Specifically, the State stated:

> [W]e are withholding from this production documents that include communications with and work product from the Office of Legislative Legal Services, counsel to the Colorado General Assembly ("OLLS"). In addition to any other relevant privileges or immunities, OLLS asserts that any communication to or from OLLS concerning the drafting of bills and amendments prior to introduction and drafts of any bills or amendments prior to introduction are privileged pursuant to Article 4, Section 16 of the Colorado constitution and section 2-2-304, C.R.S. Additionally, drafts of bills and amendments prior to introduction are work product pursuant to section 2-3-505 (2)(b), C.R.S. OLLS also contends that under the common interest doctrine these privileges extend to others whom the member has authorized to work on bills and amendments. Please advise whether you object to our withholding of these documents so that we may advise OLLS so that they have the opportunity to take any action they deem necessary to protect their interests.

On December 16, 2020, Plaintiffs responded to the State, stating that they objected to the withholding of documents based on the common-interest doctrine. They contended only that federal common-law governed OLLS's assertion of the common law privilege and that there was no basis for applying that privilege here.

**II.   The At Issue Documents**

The Representatives assert that the following nine documents, consisting of six emails/email chains, two attached drafts of the Bill, and a document reflecting legal research from OLLS are not discoverable by Plaintiffs. Notably, the State has already produced to Plaintiffs four attachments to the emails that were documents generated by Altria. The parties to the emails include Representatives Caraveo and McCluskie; OLLS attorneys Ed DeCecco and Jennifer Berman; members of the Governor's staff Cary Kennedy, David Oppenheim, and Lisa Kaufmann; registered lobbyist Will Coyne; and political strategist Craig Hughes, all of whom were authorized to be and were directly involved in drafting the Bill. The emails are all dated

between June 4 and 10, 2020 when the Bill was being drafted and finalized, and all concern the Bill, as do the three non-produced attachments which include two drafts of the Bill. Two of the emails/ email chains reflect the thought processes of OLLS but are between only the Governor's Office and Mr. Hughes. Below is a summary of the documents:

| Doc. # | Date | Participants | Description | Privilege Type |
|---|---|---|---|---|
| 1. | 6/10/2020 | Cary Kennedy, Craig Hughes, Lisa Kaufmann, David Oppenhiem Ed DeCecco | Email chain regarding changes to draft bill | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 2. | 6/10/2020 | N/A | Draft bill attached to Doc. No. 1 | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 3. | 6/4/2020 | Cary Kennedy, Craig Hughes, Lisa Kaufmann, Ed DeCecco, Jennifer Berman | Email chain regarding research for bill | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 4. | 6/4/2020 | N/A | Legal research attached to Doc. No. 3 | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 5. | 6/10/2020 | Cary Kennedy, Ed DeCecco, Will Coyne, Yadira Caraveo, Julie McCluskie, Craig Hughes, Lisa Kaufmann, David Oppenhiem | Email chain regarding changes to draft bill | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 6. | 6/10/2020 | N/A | Draft bill attached to Doc. No. 5 | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |

| Doc. # | Date | Participants | Description | Privilege Type |
|---|---|---|---|---|
| 7. | 6/4/2020-6/5/2020 | Cary Kennedy, Jennifer Berman, Ed DeCecco | Email chain regarding research for bill | Work Product<br>Legislative Immunity<br>Legislative Privilege<br>Deliberative Process Privilege |
| 8. | 6/4/2020 | Cary Kennedy, Craig Hughes, Lisa Kaufmann | Email chain regarding research for bill | Work Product<br>Legislative Immunity<br>Legislative Privilege<br>Deliberative Process Privilege |
| 9. | 6/4/2020 | Craig Hughes, Cary Kennedy, Lisa Kaufmann | Email chain regarding research for bill | Work Product<br>Legislative Immunity<br>Legislative Privilege<br>Deliberative Process Privilege |

The Representatives now bring this motion for a protective order to prevent Plaintiffs from obtaining these documents.

## ARGUMENT

**I.    The Documents Are Privileged.**

**A.    Colorado Privilege Law Applies.**

Although federal courts generally apply federal privilege law to claims arising under federal law, "if state doctrine promoting confidentiality does not conflict with federal interests, it may be taken into account as a matter of comity." *Gottlieb v. Wiles*, 143 F.R.D. 235, 237 (D. Colo. 1992). In addition, "when there is no compelling federal interest, and the subject matter is one which traditionally has been assigned to the states and for which state jurisprudence is well developed, federal courts may 'resort to state law analogies for the development of a federal common law of privileges.'" *Emmi v. DeAngelo*, 261 F. Supp. 3d 556, 559 (E.D. Pa. 2017) (quoting *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982)).

Applying state privilege law here would not conflict with any compelling federal interest. Rather, the dispute here is of paramount importance for *Colorado*, because it concerns whether

7

Colorado state legislators can be compelled to disclose documents concerning the state legislative process. Because Colorado has a body of privilege law relevant to this issue, as a matter of comity, this Court should apply it here.

> **B.** **Both legislative immunity and work product protection prevent the documents from being discovered.**
>
> > **1.** **Because the documents concern legislative activities, they are protected by legislative immunity.**

Legislative immunity for members of the Colorado General Assembly is derived from the Speech and Debate clause of Article V, Section 16 of the Colorado Constitution. It states in relevant part that "[t]he members of the general assembly … for any speech or debate in either house, or any committee thereof, … shall not be questioned in any other place." This language parallels legislative immunity provided under the federal Speech and Debate Clause, and Colorado state courts have cited both when applying the doctrine. *See. e.g*, *Colo. Common Cause v. Bledsoe*, 810 P.2d 201, 207 (Colo. 1991); *Romer v. Colo. General Assembly*, 810 P.2d 215, 220–25 (Colo. 1991).

The purpose of legislative immunity is to protect the independence and integrity of the legislature and reinforce the separation-of-powers system of government. It does so by protecting legislators from executive-branch intimidation and accountability to a potentially hostile judiciary and by shielding them from the costs, distractions, and inconveniences of a trial. *Colo. Common Cause*, 810 P.2d at 207–08. The justification for allowing legislators to be immune from questioning for speech and debate is that immunity allows legislators to freely consider and enact laws that benefit the public interest "without undue hindrance or fear caused by threatened or pending lawsuits related to their legislative duties." *Id.* at 208. Legislative

8

immunity thus exists "not . . . simply for the personal or private benefit of [legislators], but to protect the integrity of the legislative process by insuring the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972).  Importantly, its protections apply not only to legislators themselves but also to "staff members" when they are "conducting or performing any duties or functions directly related to [] legislative activity when it is conducted or performed at the direction of members of the general assembly." C.R.S. § 2-2-304; *see also Gravel v. United States*, 408 U.S. 606, 618 (1972) (legislative immunity protections apply "not only to [legislators] but also to [their] aides insofar as the conduct of the latter would be a protected legislative act if performed by the [legislators]").

"Legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Sable v. Myers*, 563 F.3d 1120, 1123 (10th Cir. 2009) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)).  This encompasses all "legitimate legislative functions," *Romer*, 810 P.2d at 225, and protects legislators "against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *Brewster*, 408 U.S. at 525. This privilege also "extends beyond civil liability, protecting 'even such pretrial matters as discovery.'" *Roma Outdoor Creations, Inc. v. City of Cumming*, No. 2:07-CV-0133-WCO, 2008 WL 11411396, at *3 (N.D. Ga. Sept. 18, 2008) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Thus, legislators can invoke legislative immunity as an evidentiary privilege against testifying or producing documents in a state or federal civil action.  *See, e.g.*, *id.*; *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 528–29 (9th Cir. 1983); *see also E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (noting that the "privilege applies whether or not the legislators themselves have been sued").

9

Underscoring the importance of the doctrine in Colorado law, in addition to the constitutional grant, legislative immunity is also provided for by statute. Under C.R.S. § 2-2-304, legislators are immune for "conduct[] or perform[ance of] legislative activity that relates to the drafting of bills and other legislative measures, including amendments to such bills or measures[.]"

Here, legislative immunity protects the documents at issue from disclosure. The drafts of the Bill, communications regarding drafting of the Bill, and legal research concerning the Bill plainly fall within the ambit of "legislative activity that relates to the drafting of bills." C.R.S. § 2-2-304. Although communications to and from OLLS and documents reflecting OLLS's impressions and processes about the Bill are not directly attributable to the Representatives, they are nonetheless privileged as the documents of the Representatives' staff. OLLS is charged by statute with drafting bills and amendments at the request of members of the General Assembly. C.R.S. § 2-3-504(1)(b). Such was the case here, where OLLS was directed by the Representatives to help draft the Bill. Thus, OLLS's communications and documents concerning their impressions and processes directly relate to "legislative activity . . . [performed] at the direction of members of the general assembly." These documents are, therefore, protected from disclosure by legislative immunity.

### C. The documents are protected work product.

Under C.R.S. § 2-3-505(2)(b), "[a]ll documents prepared or assembled in response to a request for a bill or amendment, other than the introduced version of a bill or amendment that was in fact introduced, shall be considered work product." Such work product is protected from disclosure. *Ritter v. Jones*, 207 P.3d 954, 961 (Colo. App. 2009).

Work product protection provides an additional, independent basis for protecting the documents at issue from disclosure. The drafts of the Bill, communications concerning the Bill, and legal research were all created in response to the Representatives' request for the Bill. Because none of the documents is an introduced version of the Bill, the carve out for such documents does not apply. The documents in dispute thus fit squarely within the statutory definition of work product and are protected from disclosure.

### D. Even if federal law were to apply, the documents would still be protected from disclosure.

Even under federal law, the documents are protected from disclosure by the federal legislative privilege for state legislators and by the deliberative process privilege. Federal law provides a qualified legislative privilege for state legislators, including the Representatives. *See, e.g.*, *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 96 (S.D.N.Y. 2003) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977)). Breaching that privilege is not appropriate here, because the need to protect the legislative process outweighs any countervailing interests. *See, e.g.*, *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 672 (D. Ariz. 2016) (holding plaintiffs failed to overcome legislative privilege where the government sought to "uphold the validity of the challenged legislation, as well as protecting the Arizona legislative process from unwarranted intrusion"); *Citizens Union v. Attorney Gen.*, 269 F. Supp. 3d 124, 170 (S.D.N.Y. 2017) (weighing the factors and holding that "[t]his is not the 'extraordinary case' where abrogation of the privileges is warranted"); *Pulte Home Corp. v. Montgomery Cty.*, No. GJH-14-3955, 2017 WL 2361167, at *6–8 (D. Md. May 31, 2017) ("This case is precisely what other courts have said the legislative privilege is designed to protect against. Unlike redistricting

11

litigation, where the public's right to fair political representation is at stake, this case is about a private party's right to seek redress from the government for its private damages.").

Likewise, the documents are protected under the deliberative process privilege, which protects documents when they are (1) pre-decisional and (2) deliberative. *Mohammed v. Holder*, No. 07–cv–02697–MSK–BNB, 2014 WL 1042309, at *5 (D. Colo. Mar. 18, 2014). This privilege is also recognized under Colorado Law. *City of Colo. Springs v. White*, 967 P.2d 1042, 1050 (Colo. 1998). Pre-decisional "means that they were created prior to the adoption of an official agency policy or position on the matter in question, rather than being post-decision explanations for the decision." *Id.* Deliberative "means that the documents were used to make recommendations or express opinions on legal or policy matters, and that the documents were created specifically for use during a decision-making process." *Id.* "The process of revising and commenting on draft legislation is inherently deliberative, as the authors are exchanging thoughts and ideas about potential legislation as part of the decision-making process." *Citizens Union of New York v. Attorney General*, 269 F. Supp. 3d 124, 160 (S.D.N.Y. 2017).

The documents at issue here are protected by this privilege. They are pre-decisional because were created during the drafting of the Bill. They are also deliberative. The drafts of the Bill, communications regarding the Bill, and research prepared to help with drafting of the Bill all express or disclose opinions and ideas about the substance of the Bill. As with qualified legislative privilege, the need to protect the legislative process here outweighs any countervailing factors. *See, e.g.*, *Nanticoke Lenni-Lenape Tribal Nation v. Porrino*, No. 15–5645 (RMB/JS), 2017 WL 4155368, at *4–7 (D.N.J. Sept. 19, 2017) (state's interest in protecting its confidential deliberations outweigh plaintiff's interest in discovery concerning legislation).

Accordingly, even if federal law applied, the documents would still be protected from disclosure.

**II.     The Representatives Did Not Waive Legislative Immunity Or Work Product Protection By Sharing Documents With The Governor's Office And Other Interested Parties.**

Privileged information "shared with third persons who have a common legal interest with respect to the subject matter thereof will be deemed neither a breach nor a waiver of the [information's] confidentiality[.]"  *Jones*, 207 P.3d at 960 (internal quotation marks and citation omitted).  "The common interest doctrine does not require existing or impending litigation.  It includes pre-existing confidential communications and documents that are shared during a common enterprise."  *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 469 (Colo. App. 2003) (holding common legal interest existed among certain proponents of a project initiated to provide water to Indian tribes, businesses, and farms).

In *Jones*, the Colorado Court of Appeals held that a draft of a bill remained privileged even though a member of the General Assembly had shared it with a third party.  *Id.* at 961.  The Court so concluded because the member had disclosed the draft to the third party in order for that person to provide analysis to assist the member's legislative effort.  *Id.*  Their resulting "advisory relationship" about the legislation "established a common legal interest" and thus the member's disclosure of the draft did not constitute waiver of the privilege.  *Id.*

As in *Jones*, here the Representatives and OLLS staff shared drafts of the Bill, research, and communications with members of the Governor's staff and other interested parties—each of whom had relevant expertise—all to further their legislative effort, *i.e.* to help with the drafting

13

process. In so doing, they established a common legal interest with those parties. Accordingly, by sharing the documents at issue with them, no privilege was waived.

## CONCLUSION

For the foregoing reasons, the Representatives respectfully request that their Motion for Protective Order be granted.

Dated: December 18, 2020

                                          Respectfully submitted,

                                          s/ *Maureen R. Witt*
                                            Maureen R. Witt
                                            J. Lee Gray
                                            Peter A. Kurtz
                                            HOLLAND & HART LLP
                                            555 17th Street, Suite 3200
                                            Denver, CO 80202-3921
                                            Telephone: 303.295.8000
                                            Facsimile: 303.295.8261
                                            pakurtz@hollandhart.com
                                            mwitt@hollandhart.com
                                            lgray@hollandhart.com

                                          **Attorneys for Representatives Julie McCluskie and Yadira Caraveo**

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2020, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to all counsel of record

*s/Maureen R. Witt*

15896975_v6