**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Judge Raymond P. Moore

Civil Action No. 20-cv-03107-RM-KLM

JENNIFER ANN SMITH, a citizen and taxpayer of
the State of Colorado,
LIGGETT GROUP LLC,
VECTOR TOBACCO INC., and
XCALIBER INTERNATIONAL LTD., LLC,

      Plaintiffs,

v.

STATE OF COLORADO, by and through JARED S.
POLIS, in his official capacity as Governor of
Colorado,
PHILIP J. WEISER, in his official capacity
as Attorney General of Colorado, and
HEIDI HUMPHREYS, in her official capacity as Interim
Executive Director of the Colorado Department of
Revenue,

      Defendants.

---

**ORDER DENYING**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

On November 3, 2020, a majority of voters in Colorado approved "Proposition EE," also known as House Bill 20-1427 ("HB 1427"). Section 10 of HB 1427 requires a minimum retail sales price of $7.00 per pack of 20 cigarettes. Defendants contend Section 10 is intended to reduce overall cigarette usage, especially among youth and young adults, and provide revenue mainly for Colorado's preschool program. Plaintiffs, however, challenge the constitutionality of Section 10 under the United States Constitution. At issue before the Court is Plaintiffs' Motion for Preliminary Injunction (the "Motion") seeking to enjoin Defendants from enforcing Section

10 which goes into effect on January 1, 2021. Due to the exigency of the matter, the Court ordered expedited briefing on the Motion and allowed the parties to conduct limited expedited discovery. In addition, on December 21, 2020, the Court held a hearing where the parties presented evidence and oral argument. The parties also provided supplemental briefing on the standard of review. After considering the Motion, the court record, the matters presented at the hearing, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

I.   BACKGROUND

Plaintiffs are Liggett Group LLC, Vector Tobacco Inc., and Xcaliber International LTD., LLC, three out-of-state discount cigarette manufacturers (collectively, the "Discount Manufacturers"), and Jennifer Ann Smith ("Ms. Smith"), a Colorado citizen who states she voted for Proposition EE. They have sued Defendants alleging Section 10 violates the dormant Commerce Clause.[1] The background which gives rise to this action and the Motion is as follows.

The cigarette supply chain generally consists of manufacturers, intermediaries (e.g., distributors), and retailers. This is true for discount and premium brand cigarette manufacturers, including Discount Manufacturers.

Discount Manufacturers – and all other cigarette manufacturers – are located out-of-state. Discount Manufacturers sell discount brand cigarettes primarily to distributors,[2] who then sell them to retailers. The retailers sell to consumers; the Discount Manufacturers operate no retail

---

[1] Plaintiffs' other claim based on alleged violations of the Colorado Constitution was dismissed voluntarily without prejudice.
[2] The parties sometimes referred to the intermediary as "wholesalers"; the terms are used interchangeably. (Ex. A-12, Shipe 30(b)(6) Depo., 16:21-17-1.) Manufacturers may also sell to a handful of large retailers, such as Kroger or Wawa. (Shipe 30(b)(6) Depo., 15:19-16:20.)
  Except for hearing exhibits, the page references are to the page number assigned to the document by the court's CM/ECF system, found in the upper right hand corner of the document.

2

stores and they do not sell directly to consumers. The cigarette manufacturers and distributors set their own prices and the retailer sets the final price to be sold to the consumer.

Discount Manufacturers compete with other cigarette manufacturers – discount and premium – mainly by pricing their products lower than other domestically sold brands of cigarettes.[3] And, no one disputes that if prices increase, the sales of cigarettes would decrease. Effective January 1, 2021, with the passage of HB 1427 and Section 10, all other things being unchanged, the price differential between discount brand and premium brand cigarettes would decrease while the retailers' profit margins would increase.[4]

Specifically, HB 1427 increases the excise tax for cigarettes to $1.10 per pack and, under Section 10, sets a minimum retail sales price of $7.00 per pack. The price differentials and margin increases are demonstrated by Figure 2 in Discount Manufacturers' expert's report, which figures the Court assumes are true for the purposes of the Motion. Thus, using Pyramid cigarettes as an example, assuming a current retail price of $5.28 per pack, the $1.10 excise tax would increase the price to $6.38 per pack. However, in order to comply with the $7.00 minimum price, the retailer would sell the Pyramid cigarettes for at least $7.00. The increase in profit margin of $0.62 would be retained by the retailers.[5] And, the price differential between Camel, a premium brand, and Pyramid would decrease from $1.10 ($6.38 - $5.28) to $0.48 ($7.48 - $7.00).

---

[3] Their goal is to get the retail store customer to purchase their brands based on price, distribution, and visibility. (Shipe 30(b)(6) Depo., 27:5-14.)

[4] For example, the discount manufacturers may not *all* change their prices in response to HB 1427. Section 10 places no restrictions on the price at which a manufacturer must sell its cigarettes to distributors or to retailers. Plaintiffs' expert, Robert S. Maness, Ph.D., presented some testimony that, as he understood it, prices charged to wholesalers are set nationally and fairly uniform across states; that wholesale prices are not altered on a state-by-state basis. That the manufacturers may not do so, however, does not mean they cannot do so.

[5] Presumably this would be in addition to whatever profits the retailer would have received at the $5.28 per pack sales price.



(ECF No. 48-2, p. 15; Ex. 35, p. 15.)

According to Discount Manufacturers' theory, because they compete by having lower prices, the $7.00 price floor would result in (1) smaller price differences between discount and premium brands of cigarettes, which will cause a significant decrease in sales of Discount Manufacturers' discount brands of cigarettes as consumers would shift to buying premium brands from other interstate cigarette manufacturers and (2) an increase in profits to in-state retailers at Discount Manufacturers' expense, with whom Discount Manufacturers allegedly compete. Thus, Discount Manufacturers assert, Section 10 discriminates between competitors – in-state retailers and out-of-state discount cigarette manufacturers – in the cigarette market and unduly burdens interstate commerce. Hence, Plaintiffs' Motion seeking to enjoin Section 10 from going into effect on January 1, 2021 followed.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins*, *Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (quotation marks and citation omitted). Before this remedy may be granted, the moving parties must establish: "'(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.'" *Diné Citizens Against Ruining our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). And, because it is an extraordinary remedy, the party's right to relief must be clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).[6]

## III. DISCUSSION

### A. PRELIMINARY INJUNCTIVE RELIEF

#### 1. IRREPARABLE HARM

Defendants do not challenge, for the purposes of the Motion, whether Discount Manufacturers will suffer irreparable harm should an injunction not enter. Accordingly, the Court will not address this requirement but will assume this factor is met.

#### 2. LIKELIHOOD OF SUCCESS ON THE MERITS

Under the Constitution's Commerce Clause, Congress has the power "[t]o regulate commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. "'[T]he Clause has [also]

---

[6] The parties agree this traditional standard applies, rather than the standard applicable to disfavored injunctions. On this record, the Court assumes it is so.

long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce.'" *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1039 (10th Cir. 2009) (quoting *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984)). This limitation is commonly called the "dormant" Commerce Clause. *Id.* It is "driven by concern about economic protectionism – that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Id.*

The Tenth Circuit has stated a state statute may violate the dormant Commerce Clause in the following three ways:

- "First, a statute that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid per se and can survive only if the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism."

- "Second, if the statute does not discriminate against interstate commerce, it will nevertheless be invalidated under the *Pike v. Bruce Church Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L.Ed.2d 174 ... (1970) balancing test if it imposes a burden on interstate commerce incommensurate with the local benefits secured."

- "Third, a statute will be invalid per se if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question."

*KT & G Corp. v. Attorney Gen. of State of Okla.*, 535 F.3d 1114, 1143 (10th Cir. 2008) (quotation and citation omitted). *See also Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1171-1172 (10th Cir. 2015) (discussing the "three varieties" of dormant Commerce Clause cases, i.e., cases applying the *Pike* balancing test, the "clearly discriminates" *Philadelphia*[7] test, and the laws-that-control-extraterritorial-conduct *Baldwin* [8]test). Plaintiffs contend Defendants violate

---

[7] *City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978).
[8] *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935).

the dormant Commerce Clause under the first two ways.[9] The Court examines the record to determine if Plaintiffs have shown they are likely to prevail under either of these two theories.

### a) "Clearly Discriminates" Facially or in Effect

Discount Manufacturers contend Section 10 clearly discriminates against out-of-state manufacturers by benefiting in-state retailers; that retailers and manufacturers compete with each other. Defendants counter that the in-state retailers and out-of-state cigarette manufacturers are not "similarly situated" – i.e., they are not competitors. In other words, there must be actual or prospective competition between the favored and disfavored entities in a single market and, here, there is not. *See General Motors v. Tracy*, 59 U.S. 278, 300 (1997) (there can be no local preference "in the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market").

"A statute may discriminate against interstate commerce on its face or in practical effect." *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1140 (10th Cir. 2016). The burden to show discrimination is on the party challenging the statute's validity. *Kleinsmith*, 571 F.3d at 1040.

Section 10, on its face, does not discriminate. It requires a minimum retail price for all cigarettes sold in Colorado. Thus, Discount Manufacturers can only prevail under this theory if they can show that the law discriminates in practical effect. That requires the challenger to show "how local economic actors are favored by the legislation, and how out-of-state-actors are burdened." *Kleinsmith*, 571 F.3d at 1041 (quotation marks and citation omitted). "Not every benefit or burden will suffice-only one that alters the *competitive* balance between in-state and out-of-state firms." *Id.* (emphasis added); *see also Brohl*, 814 F.3d at 1142 (same). "The fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a

---

[9] Plaintiffs' Motion argues Section 10 violates the dormant Commerce Clause under all three theories, but acknowledged during the hearing that they were only proceeding only under the first two theories.

claim of discrimination against interstate commerce." *Exxon Corp.*, 437 U.S. at 127. Nor does differential treatment between in-state and out-of-state entities establish a violation of the dormant Commerce Clause. "Conceptually, of course, any notion of discrimination assumes a comparison of substantially similar entities." *Tracy*, 519 U.S. at 298; *see also Brohl*, 814 F.3d at 1143 ("equal treatment requires that those similarly situated be treated alike").

Discount Manufacturers argue they are not merely competitors with other cigarette manufacturers – that Section 10 does more than shift business from one interstate supplier to another. Instead, Discount Manufacturers contend, they compete with Colorado retailers in the following three-ways: vertical competition; horizontal competition; and competition for consumer awareness.[10] Thus, Discount Manufacturers argue, the law clearly discriminates against them – who are out-of-state – in favor of in-state (Colorado) retailers. The Court examines these arguments below.

The Court starts with "consumer awareness." According to Discount Manufacturers' expert, Robert S. Maness, Ph.D., retailers have various ways to increase consumer awareness through placement of products on the shelf and point-of-sale type advertisements. And the retailers of cigarettes compete with Discount Manufacturers to draw the attention of customers. This proposition is not a model of clarity and wholly unconvincing as establishing competition between manufacturers and retailers in any way relevant to the dormant Commerce Clause analysis. Regardless, from the Court's perspective, any placement of products (or advertisement) by the retailer in its store results in a competition for consumer awareness between the *products* at issue, not between the seller of the product (the retailer) and the manufacturer of the product

---

[10] These three theories of competition are also set forth in Plaintiffs' Reply brief (ECF No. 48), but it appears they varied or overlapped in many respects during the hearing. Regardless, the Court will address the three theories espoused, whether they may be referred to, for example, as "horizontal" competition or as consumer awareness or attention.

(Discount Manufacturers). That is to say, the retail shelf positioning of a product affects the target consumer's awareness among similar products – here, cigarettes. And, such competition here is undeniably between out-of-state manufacturers. Accordingly, the Court finds no competition for consumer awareness between Discount Manufacturers and Colorado retailers.

Similarly, Discount Manufacturers fail to show any vertical competition between them and Colorado retailers. Manufacturers, distributors, and retailers are part of the vertical supply chain of cigarettes. Discount Manufacturers contend that there is competition between the upstream manufacturers and downstream retailers over the "pie of profits" to be divided among them. According to Dr. Maness, the more that pie of profits goes to retailers, the less of that pie is going to Discount Manufacturers. Defendants' expert, Svetla K. Tzenova, Ph.D., however, disagrees. She counters that this relationship is more of a division of profits rather than a competition for profits in this supply link. Elementally, as Dr. Tzenova aptly describes and opines, the retailer is the *customer* of the distributor (and sometimes manufacturer) and the distributor is the *customer* of the manufacturer. The customer (retailer) does not compete with the person or entity from whom they are buying the products (manufacturer seller), when the manufacturer does not also sell to the end user, here the consumer. The Court agrees. Accordingly, the Court also finds no vertical competition as Discount Manufacturers theorize between them and the in-state retailers.

Finally, Discount Manufacturers also fail to establish horizontal competition between them – the manufacturer of cigarettes – and Colorado retailers who sell them. Discount Manufacturers, at least implicitly, acknowledge they are not in "classic horizontal competition," e.g., Burger King versus McDonald's, with the in-state retailers. They contend, however, that the cigarette industry is a "very unique industry" and, here, discount manufacturers are competitors

with retailers because, with the passage of Section 10, Discount Manufacturers cannot offer incentives to retailers because they are unable to cut prices due to the $7.00 price floor. But, Discount Manufacturers argue, the premium brand manufacturers can still offer incentives to retailers, which will lead to a closer alignment between retailers and premium brand manufacturers, to the detriment of discount brand manufacturers. In fact, Dr. Maness opines that the retailers are, in effect, the premium brand manufacturers' "agents."

The Court is not persuaded by what amounts to nothing more than Dr. Maness's say so. Even if there was any alleged alignment of interests with premium brand manufacturers, Discount Manufacturers fail to show how that renders the retailers the agents of premium brand manufacturers or how that makes retailers competitors with Discount Manufacturers. The competition remains between cigarette manufacturers who seek to persuade the retailers as to whose goods they should display on premium shelf space.

At bottom, the Court agrees that Discount Manufacturers compete with other cigarette manufacturers such as Philip Morris or R.J. Reynolds. The Court does not agree, or find, on this record, that Discount Manufacturers compete with Colorado retailers in the cigarette market.[11, 12] In other words, that Discount Manufacturers and retailers are "similarly situated for constitutional purposes." *Tracy*, 519 U.S. at 199. Accordingly, Discount Manufacturers fail to show Section 10 clearly discriminates in violation of the dormant Commerce Clause.

      b)  **Burden on Interstate Commerce and *Pike* Balancing**

Discount Manufacturers assert that even if Section 10 does not discriminate against interstate commerce, it is nonetheless invalid under *Pike* because there are less burdensome

---

[11] The Court renders no opinion as to whether, under other factual scenarios or theories, cigarette manufacturers and retailers can or do compete.
[12] The Court also notes that the assumption that all retailers in Colorado are intrastate Colorado entities is unsupported. Some retailers obviously are, but others – such as 7-Eleven – appear to be out-of-state corporations.

alternatives, i.e., that Section 10 imposes a burden on interstate commerce which is not commensurate with the local benefits. Defendants respond that, even under *Pike*, the Court must first find Section 10 unduly burdens interstate commerce and, if so, the Court then conducts a balancing test. Here, Defendants contend, there are no in-state competitors and Discount Manufacturers' potential loss of business is to other out-of-state manufacturers; therefore, there can be no undue burden that violates the dormant Commerce Clause.  The Court starts – and ends – with the undue burden inquiry.

"Whether a state law unduly burdens interstate commerce is a separate inquiry from whether a state law discriminates against interstate commerce." *Brohl*, 814 F.3d at 1145. Even if the challenged law does not discriminate, the law violates the dormant Commerce Clause if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. The *Pike* balancing test involves the consideration of four factors: "(1) the nature of the putative local benefits advanced by the [law]; (2) the burden the [law] imposes on interstate commerce; (3) whether the burden is 'clearly excessive in relation to' the local benefits; and (4) whether the local interests can be promoted as well with a lesser impact on interstate commerce." *Blue Circle Cement, Inc. v. Bd. of Cty. Comm'rs of Cty. of Rogers*, 27 F.3d 1499, 1512 (10th Cir. 1994) (citing *Pike*, 397 U.S. at 142); *see also Johnson & Johnson Vision Care, Inc. v. Reyes*, 665 F. App'x 736, 744 (10th Cir. 2016) (same).

"Although evidence regarding a particular company may be suggestive, the benefit-to-burden calculation is based on the overall benefits and burdens that the statutory provision may create, not on the benefits and burdens with respect to a particular company or transaction." *Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1309 (10th Cir. 2008). The law does not impermissibly burden interstate commerce "simply because an otherwise valid regulation causes some business

11

to shift *from one interstate supplier to another*." *Exxon Corp.*, 437 U.S. at 127 (emphasis added). This is because the Commerce Clause protects "the interstate market, not particular interstate firms." *Id.* at 127-128.

Section 10 does not unduly burden interstate commerce for the same reasons why the Court finds it does not discriminate: while, under Discount Manufacturers' theory, Section 10 burdens competition between interstate *competitors*, it does not burden interstate *commerce*. Under Discount Manufacturers' theory, all cigarette manufacturers lose presence in Colorado due to the minimum price floor because of the decrease in sales overall.[13] And, as shown by the repeated references to the loss of discount brand cigarette sales to premium cigarette brands due to the price floor, any claimed "prohibition" from competition in Colorado is between Discount Manufacturers and premium brand cigarette manufacturers. Accordingly, the Court finds Section 10 creates no constitutional burden on interstate commerce.

### 3.  BALANCE OF INTERESTS AND PUBLIC INTERESTS

In light of the Court's finding that the Discount Manufacturers fail to establish a likelihood of success on the merits, it need not decide this remaining factor. *See First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d at 1136, 1141 (10th Cir. 2017) (recognizing that all four elements must be met with limited exception inapplicable here).

### B.  STANDING – PLAINTIFF SMITH

Defendants contend that Plaintiff Smith is not a proper party because she lacks standing to sue for alleged violations of the dormant Commerce Clause under Count 1.[14] Plaintiffs counter

---

[13] The reduction of cigarette usage is, after all, a goal of Section 10.
[14] ECF No. 40, p. 2 & n.1.

Plaintiff Smith has standing and that the Court need not reach this issue because Defendants do not contest that the Discount Manufacturers have standing.[15]

The doctrine of standing insists "that a litigant prove that [she] has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, No. 19-309, 2020 WL 7250101, at *3 (U.S. Dec. 10, 2020) (quotation marks and citations omitted); *see also Kansas Nat. Res. Coal. v. United States Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020). Standing requires an "injury in fact that must be concrete and particularized, as well as actual or imminent.…It cannot be conjectural or hypothetical….[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an injury in fact." *Carney*, 2020 WL 7250101, at *3 (quotation marks and citations omitted). Standing cannot be established "by asserting an abstract general interest common to all members of the public." *Id.*, at *4 (quotation marks and citation omitted). A plaintiff bears the burden of establishing standing at the time she brought this lawsuit and of maintaining it thereafter. *Id.*

Ordinarily, the Court "must resolve jurisdictional questions before addressing the merits of a claim." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1168–69 (10th Cir. 2012). However, the Court "'may rule that a party loses on the merits without first establishing jurisdiction when the merits have already been decided in the court's resolution of a claim over which it did have jurisdiction.'" *Id.* (brackets omitted) (quoting *Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1259-60 (10th Cir. 2009)). Under these circumstances, the "resolution of the merits is foreordained, and resolution of the jurisdictional question can have no effect on the outcome." *Id.* (quotation marks and brackets omitted) (quoting *Starkey et rel. A.B.*, 569 F.3d at 1260).

---

[15] ECF No. 48, p. 1 n.1

In this case, Plaintiffs argue repeatedly about alleged competition between Discount Manufacturers, who have standing, and Colorado retailers, and how the dormant Commerce Clause is violated based on the alleged protectionism of in-state retailers at the expense of out-of-state Discount Manufacturers. The Court has rejected Count 1 on the merits as to the Discount Manufacturers, and its findings and conclusions apply equally to Plaintiff Smith; therefore, the Court need not decide whether she has standing.

### IV.    CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiffs' Motion for Preliminary Injunction (ECF No. 13) is **DENIED**.

DATED this 28th day of December, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge