**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03107-RM-KLM

JENNIFER ANN SMITH, a citizen and taxpayer of
the State of Colorado, LIGGETT GROUP LLC,
VECTOR TOBACCO INC., and XCALIBER
INTERNATIONAL LTD., LLC,

Plaintiffs,

v.

STATE OF COLORADO, by and through JARED S.
POLIS, in his official capacity as Governor of
Colorado, PHILIP J. WEISER, in his official capacity
as Attorney General of Colorado, and HEIDI
HUMPHREYS, in her official capacity as Interim
Executive Director of the Colorado Department of
Revenue,

Defendants.

---

**PLAINTIFFS' OPPOSITION TO INTERVENORS'
MOTION FOR PROTECTIVE ORDER (DKT. NO. 61)**

---

KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

1400 16th Street, Suite 400
Denver, Colorado 80202
(720) 932-8303

MAVEN LAW GROUP
1800 Glenarm Place,
Denver, Colorado 80202
(303) 218-7150

*Attorneys for Plaintiffs*

## **INTRODUCTION**

In this action challenging Section 10 of the Bill[1] as unconstitutional under the Commerce Clause, this Court ordered defendants to produce documents plaintiffs requested relating to communications concerning Section 10 between and among defendants, members of the General Assembly, and Philip Morris in order, as the Court put it, "to address whether Section 10 served any legitimate state interest, and whether there were alternative means to address Section 10's stated purpose of increasing state revenue and reducing overall cigarette consumption which would impose lesser burdens on interstate commerce."  (Dkt. No. 38 at 2) (the "December 3 Order").

Intervenors Julie McCluskie and Yadira Caraveo, legislators who sponsored the Bill, move for a protective order preventing defendants from producing nine documents responsive to the December 3 Order – six email chains and three attachments – on the ground that they are protected by legislative immunity from suit and work product doctrines under Colorado law and the qualified legislative and deliberative process privileges under federal law.

Intervenors' motion is meritless.  Any immunity from suit or statutory work product privilege afforded to legislators by Colorado law is irrelevant here.  Federal common law concerning privileges exclusively governs in this federal question action.  The Tenth Circuit Court of Appeals has not recognized an evidentiary privilege that shields state legislators from producing documents.  However, to the extent that the Tenth Circuit has recognized legislative immunity – from which the qualified legislative evidentiary privilege traditionally derives – it

---

[1]    Capitalized terms not defined herein have the meanings assigned to them in Intervenors' motion for a protective order (the "Motion").

protects only communications in "formal, official legislative proceedings," *Bastien v. Office of Senator Ben Nighthorse Campbell*, 390 F.3d 1301, 1315 (10th Cir. 2004). The documents Intervenors seek to withhold – emails among lobbyists, the Governor's advisors, and the Office of Legislative Legal Services ("OLLS"), with certain attachments apparently supplied by Philip Morris's parent company, Altria – plainly are not those kind of documents and therefore are not protected by the legislative privilege. Indeed, federal courts recognizing a legislative privilege do not extend it to communications with lobbyists. And even if a legislative privilege *did* apply, it is a qualified privilege that gives way where, as here, plaintiffs assert that the State violated their federal constitutional rights.

Nor may Intervenors avail themselves of the federal deliberative process privilege, which also does not apply to the documents at issue and, in any event, may be asserted only by members of the Executive Branch.

Accordingly, and as shown further below, the motion should be denied.

## BACKGROUND

Intervenors' motion includes the following list of the withheld documents:

| Doc # | Date | Participants | Description | Privilege Type |
|---|---|---|---|---|
| 1. | 6/10/2020 | Cary Kennedy, Craig Hughes, Lisa Kaufmann, David Oppenheim, Ed DeCecco | Email chain regarding changes to draft bill | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 2. | 6/10/2020 | N/A | Draft bill attached to Doc. No. 1 | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |

| 3. | 6/4/2020 | Cary Kennedy, Craig Hughes, Lisa Kaufmann, Ed DeCecco, Jennifer Berman | Email chain regarding research for bill | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
|---|---|---|---|---|
| 4. | 6/4/2020 | N/A | Legal research attached to Doc. No. 3 | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 5. | 6/10/2020 | Cary Kennedy, Ed DeCecco, Will Coyne, Yadira Caraveo, Julie McCluskie, Craig Hughes, Lisa Kaufmann, David Oppenheim | Email chain regarding changes to draft bill | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 6. | 6/10/2020 | N/A | Draft bill attached to Doc. No. 5 | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 7. | 6/4/2020-6/5/2020 | Cary Kennedy, Jennifer Berman, Ed DeCecco | Email chain regarding research for bill | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 8. | 6/4/2020 | Cary Kennedy, Craig Hughes, Lisa Kaufmann | Email chain regarding research for bill | Work Product Legislative Immunity Legislative Privilege Deliberative Process Privilege |
| 9. | 6/4/2020 | Cary Kennedy, Craig Hughes, Lisa Kaufmann | Email chain regarding research for bill | Work Product Legislative Immunity Legislative Privilege  Deliberative Process Privilege |

(Motion 6-7.)

      All but one of the documents (#7) include, as "Participants," third-party lobbyists:  Craig

Hughes, who was the intermediary between Philip Morris/Altria and various government officials (Burgo Decl. Ex. A [Kennedy Tr.] at 46:17-47:2; 71:12-14), and Will Coyne. All of the documents include, as "Participants," members of the Governor's staff, including Cary Kennedy, David Oppenheim, and/or Lisa Kaufmann.  Intervenors themselves are listed as Participants only on document #5.  Ed DeCecco and/or Jennifer Berman, both of the OLLS (Motion 5), are on documents ##1, 3, 5, and 7.  Documents 8 and 9 include only lobbyists and the Governor's staff.

## ARGUMENT

As "[t]he party resisting discovery based on a privilege," Intervenors have the "burden of establishing that the privilege applies." *The Estate of Jeffrey Scott Lillis v. Correct Care Sols., LLC*, No. 16-CV-03038-KLM, 2019 WL 9364162, at *2 (D. Colo. Feb. 7, 2019).  Intervenors do not and cannot satisfy their burden here.

I.   **UNDER APPLICABLE FEDERAL LAW, THE DOCUMENTS ARE NOT PRIVILEGED.**

A.   **Federal Common Law, Not State Statutory Law, Applies Here.**

Contrary to Intervenors' assertion (Motion 7), because plaintiffs' claims arise exclusively under federal law, federal common law, not state statutory law, governs Intervenors' assertions of privilege.

Rule 501 of the Federal Rules of Evidence provides in relevant part that the "common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege" except for "privilege regarding a claim or defense for which state law supplies the rule of decision." Here, federal law supplies the rule of decision for all of the claims and defenses, and federal common law – not state law, as Intervenors erroneously contend – therefore governs this motion.  *See The Estate of Jeffrey Scott Lillis*, 2019 WL 9364162, at *2

("[F]ederal privilege law controls in cases proceeding under federal jurisdiction."); *Am. Trucking Assocs., Inc. v. Alviti*, No. 18-378-WES, 2020 WL 6255264, at *3 n.1 (D.R.I. Oct. 23, 2020) ("Because Plaintiffs' [Commerce Clause] claims are based on federal law, privilege protections contained within state law are inapposite."), *motion to certify appeal denied,* No. 18-378 WES, 2020 WL 7212149 (D.R.I. Dec. 7, 2020).

Under federal law, privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth," *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006) (quoting *United States v. Nixon,* 418 U.S. 683, 710 (1974) (internal quotation marks omitted)), and any such privileges "must be strictly construed. . . " *In re Qwest*, 450 F.3d at 1185 (internal quotations omitted). *See also Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990) ("[F]ederal courts narrowly construe all privileges, whether of constitutional, common-law, or statutory origin.").

Intervenors' extensive reliance on state statutes for their privilege claims is thus entirely misplaced. *See United States v. Gillock*, 445 U.S. 360, 373 (1980) (privilege for state legislators contained in State constitution inapplicable in federal criminal case). Courts in this District have repeatedly rejected claims of statutory privilege for state officials in cases involving federal causes of action. *See Joyce v. N. Metro Task Force*, No. 10-CV-00649-CMA-MJW, 2011 WL 1884618, at *3 (D. Colo. May 18, 2011) (state statutory privilege for records of executive sessions of State Boards did not apply, because "[f]ederal law has not recognized a specific privilege for records of executive sessions of State Boards, unless there is another recognized privilege involved, such as the attorney-client privilege"); *Fourhorn v. City & County of Denver*, No. 08-CV-01693-MSK-KLM, 2009 WL 2407569, at *2 (D. Colo. Aug. 3, 2009) ("[T]o the

extent that Defendant Denver contends that local city ordinances create a deliberative process

privilege that is applicable to the documents at issue, the argument is rejected" because "[t]he

prevailing concern here is whether federal common law supports the application of the privilege

to the documents and, if so, whether such privilege must yield to disclosure due to a compelling

need.").[2]

The cases Intervenors cite are not to the contrary.  Intervenors cite *Gottlieb v. Wiles*, 143

F.R.D. 235, 237 (D. Col. 1992) for the proposition that "if state doctrine promoting

*confidentiality* does not conflict with federal interests, it may be taken into account as a matter of

comity."  (Motion 7.)  However, *Gottlieb* – which involved a state *confidentiality* doctrine –

expressly recognized that to the extent a state statutory provision "creates a state *privilege*

against disclosure, it would not be entitled to legal recognition in a federal question case pending

in federal court." 143 F.R.D. at 237 (emphasis added).  Intervenors here seek to withhold the

documents based on a state statutory *privilege*, which is *not* entitled to be taken into account.[3]

*See also Atteberry v. Longmont United Hosp.*, No. 03-D-488 (BNB), 2005 WL 8169547, at *2

(D. Colo. Aug. 18, 2005) (Magistrate properly "refused to apply Colorado state law privileges as

a matter of comity" where "neither the United States Supreme Court nor the Tenth Circuit Court

---

[2]        Intervenors have not even shown that the state statutes they cite would shield documents from production, even if those statutes were relevant, which they are not. C.R.S. § 2-2-304 only protects "staff members of the general assembly from being "***questioned*** . . . for conducting or performing any duties or functions directly related to such legislative activity" (emphasis added).  Plaintiffs are not seeking Intervenors' testimony, however.  C.R.S. § 2-3-505 states that documents "prepared or assembled in response to a request for a bill or amendment . . . shall be considered work product, as defined in section 24-72-202(6.5)," which section applies to requests under the Colorado Open Records Act, not civil litigation.

[3]        *Emmi v. DeAngelo*, 261 F. Supp. 3d 556, 559 (E.D. Pa. 2017), cited by Intervenors (Motion 7), is similarly inapposite.  There, the court, in extending the federal common law spousal privilege in criminal cases to civil cases, looked to state law only as an analogy.  *Id.*  The court did not recognize an entirely new broad state law privilege that did not otherwise exist in federal common law or look to state law to replace federal common law.  Further, the court explicitly recognized that even examining state law by analogy is inappropriate where, as here, there is a compelling federal interest.

of Appeals has recognized [them] under federal common law.").

Nor, given F.R.E. 501, is comity a basis for deferring to state privilege laws:

> When it comes to the admissibility of evidence in federal court, the federal interest in enforcement of federal law, including federal evidentiary rules, is paramount. State rules of professional conduct, or state rules on any subject, cannot trump the Federal Rules of Evidence.

*U.S. v. Lowery*, 166 F.3d 1119, 1125 (11th Cir. 1999)).

A critical reason for this rule is to prevent states from infringing on or limiting federal rights by creating privileges:

> It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Mason v. Stock*, 869 F. Supp. 828, 832 (D. Kan. 1994) (quotations omitted). *See also Smith v. Losee,* 485 F.2d 334, 341 (10th Cir. 1973) ("[T]he federally created cause of action cannot be restricted by state laws or rules relating to sovereign immunity nor to official [immunity].")

Accordingly, any assertion of privilege must be based on federal common law, not state constitutional or statutory law, as Intervenors claim.

### B.  Legislative Immunity or Privilege Does Not Apply Here.

Intervenors argue that the Documents are shielded from production by Intervenors' purported right to legislative immunity from suit contained in the Colorado Constitution's Speech and Debate Clause and C.R.S. § 2-2-304.  (Motion 13-14.)  However, as shown, state law does not create a basis to withhold documents in a federal action.

Intervenors also separately assert that they are protected by a federal common law qualified legislative privilege (Motion 3, 11); however, they have pointed to no case from the Tenth Circuit that recognizes such a privilege to shield state legislators from producing documents in actions involving federal claims.  *See Atteberry*, 2005 WL 8169547, at *2 (refusing to recognize state law privilege where "neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has recognized [it] under federal common law.").  To the contrary, as the Tenth Circuit recognized, the Supreme Court in *Gillock* "declin[ed] to recognize a state privilege for state legislators in federal court, noting that such a privilege was not recognized at common law."  *United States v. Burtrum*, 17 F.3d 1299, 1301 (10th Cir. 1994), *abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996).  *See also Losee,* 485 F.2d at 341 ("[T]he federally created cause of action cannot be restricted by state laws or rules relating to sovereign immunity nor to official [immunity].").

To the extent that courts do recognize a legislative privilege under federal common law, it at most would bar the ***use*** of certain legislative materials against the legislators, not their disclosure.  For example, in *Bastien*, 390 F.3d at 1307, the Tenth Circuit noted that the immunity from suit afforded to members of Congress by the Speech and Debate Clause of the U.S. Constitution "may not bar a particular prosecution [of federal legislators] altogether, it could preclude *use* of certain evidence."[4]  *See also In re Grand Jury (Granite Purchases for State*

---

[4]      As Intervenors recognize (Motion 8), the Speech and Debate Clause in the Colorado Constitution parallels that of the U.S. Constitution.  *See Romer v. Colorado Gen. Assembly*, 810 P.2d 215, 221 (Colo. 1991) ("We can find no reason to analyze Colorado's protection for speech or debate any differently than the federal clause has been examined by the federal judiciary.")  However, any legislative privilege stemming from state law, to the extent that it exists in this Circuit, "[l]ack[s] the [federal] constitutional backing of the Speech and Debate Clause" and would therefore be "undeniably weaker than that given to federal lawmakers."  *Am. Trucking Assocs.*, 2020 WL 6255264, at *4.

*State Capital-Grand Jury Subpoena No. 86-1)*, 821 F.2d 946, 953 n.4 (3d Cir. 1987) ("the privilege is primarily one of non-evidentiary use, not one of non-disclosure."); *E.E.O.C. v. Wash. Suburban Sanitary Comm'n* (*WSSC I* ), 666 F. Supp. 2d 526, 532 (D. Md. 2009), *aff'd* 631 F.3d 174 (4th Cir. 2011) (same); Wright & Miller, Legislative Privilege, 26A Fed. Prac. & Proc. Evid. § 5675 (1st ed.) (citing *Bastien*, 390 F.3d at 1307) (privilege afforded to members of Congress under the Speech and Debate Clause of the U.S. Constitution "is not a privilege to refuse to disclose; rather it is a privilege to bar the use of the evidence.").[5]

Even if the Tenth Circuit did recognize an evidentiary privilege that applies to state legislators, it would not apply here.

First, the Documents are not the type of communications for which the legislative privilege applies. The legislative privilege does not extend to "political acts." *Lindley v. Life Inv'rs Ins. Co. of Am.*, No. 08-C V-379-CVE-PJC, 2009 WL 2245565, at *6 (N.D. Okla. July 24, 2009) (interpreting federal law to recognize legislative privilege under state law in diversity action). Moreover, the Tenth Circuit has recognized that the legislative immunity, from which the legislative privilege derives, has "always been confined within the limits of formal, official proceedings." *Bastien*, 309 F.3d at 1316. It does not extend "to informal information gathering" from third parties "either personally by a member of Congress or by congressional aides," but

---

[5]   Intervenors' cases are not to the contrary. *Sable v. Myers*, 563 F.3d 1120, 1126 (10th Cir. 2009) found that municipal legislators were immune from a damages lawsuit asserting both federal and state law claims arising from their votes relating to a condemnation proceeding, but had nothing to do with an evidentiary privilege. In *Roma Outdoor Creations, Inc. v. City of Cumming, Georgia*, No. 2:07-CV-0133-WCO, 2008 WL 11411396, at *3 (N.D. Ga. Sept. 18, 2008), the plaintiff sought to **depose** the mayor, not simply to obtain documents. Courts recognize broader protections for documents than testimony. *See, e.g.*, *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 302 (D. Md. 1992) (legislative immunity is "a personal immunity from liability as well as an evidentiary and testimonial privilege. It does not, however, extend to certain types of documentation.") Further, the court independently found that the Mayor did not possess responsive information. In *E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 185 (4th Cir. 2011) (Motion 9), the court held that legislative immunity did **not** protect the defendant from complying with an EEOC subpoena.

only information gathering where "the committee had subpoenaed witnesses or disclosed information during a hearing." *Bastien*, 390 F.3d at 1316.

Courts have thus questioned whether the legislative privilege may apply at all to documents, and limited its application to documents that are an "integral part of the deliberative and communicative processes by which legislators participate in legislative or committee proceedings." *Lindley*, 2009 WL 2245565, at *10 (internal quotations omitted) (noting disagreement among courts concerning whether legislative privilege applies to documents). Here, Intervenors have not established that the Documents were a way of the legislators "participat[ing] in legislative or committee proceedings." To the contrary, these emails between Intervenors and lobbyists appear to be, at best, the sort of informal information gathering from lobbyists that is the epitome of political, not legislative acts.

Second, all but one of the Documents includes lobbyists, Huges and/or Coyne. And four of Documents were created by Philip Morris. (Motion 5.) However, the legislative privilege does not extend to conversations with lobbyists, or other "knowledgeable outsiders." *See Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015) ("a conversation between legislators and knowledgeable outsiders, such as lobbyists, to mark up legislation is a session for which no one could seriously claim privilege"); *N. Carolina State Conference of the NAACP v. McCrory*, No. 1:13CV658, 2014 WL 12526799, at *3 (M.D.N.C. Nov. 20, 2014) (same), *objections overruled sub nom. N. Carolina State Conference v. McCrory*, No. 1:13CV658, 2015 WL 12683665 (M.D.N.C. Feb. 4, 2015); *Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) (same); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elecs.,* Case No. 11C5065, 2011 WL 4837508, *10 (N.D. Ill. Oct. 12, 2011) (same); *Rodriguez*

*v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003), *aff'd,* 293 F. Supp. 2d 302 (S.D.N.Y. 2003)
(same).

Third, Intervenors are parties to only *one* of the nine Documents (and that communication
also included both Coyne and Hughes).  (Motion 6 (Document 5).)  Intervenors claim privilege
for six of the remaining Documents based on the presence of members of the OLLS because
Intervenors claim that they are "the Representatives' staff" (*id.* 10).  However, there is no basis
to extend the legislative privilege to the OLLS.  While Intervenors note that legislative immunity
for members of the U.S. Congress has been extended to legislative "aides" (Motion 9), that
extends only to aides who are legislators' "functional equivalents" or "aides who function as
[legislators'] alter egos in performing legislative acts."  *Bastien*, 390 F.3d at 1315.  Courts refuse
to extend the privilege to "legislative employees who provide information to legislators
collectively, as, for example, technical employees of a standing committee, who do not advise a
particular legislator as his or her personal staff."  *Fla. Ass'n of Rehab. Facilities, Inc. v. State of
Florida Dep't of Health & Rehab. Servs.*, 164 F.R.D. 257, 267 (N.D. Fla. 1995). Here, the OLLS
advises the General Assembly, not a particular legislator as his or her personal staff, and are
certainly not any "alter ego" or "functional equivalent" for individual members of the General
Assembly.  Thus, the legislative privilege does not apply to them.

Fourth, Intervenors have offered no explanation for withholding Documents 8 and 9,
which do not include either Intervenors or members of OLLS.

Finally, **all** of the documents at issue here include representatives of the executive branch
– Kennedy, Oppenheim, and Kaufmann.  (Motion 6-7.)  However, the "legislative privilege does
not extend to communications involving executive branch officials." *See Pueblo of Jemez v.*

*United States*, No. CV 12-0800 JB/JHR, 2018 WL 4773357, at *4 (D.N.M. Oct. 3, 2018) ("the Court rejects the notion that communications between the respective branches of Plaintiff's government qualify for protection."); *see also Gravel v. U.S.*, 408 U.S. 606, (1972) ("Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies – they may cajole and exhort with respect to the administration of a federal statute – but such conduct, though generally done, is not protected legislative activity"); *Gilby v. Hughs*, 471 F. Supp. 3d 763 (W.D. Tex. 2020) ("To the extent that legislators or legislative staff communicated with any outsider (e.g., non-legislators, non-legislative staff) any legislative privilege is waived as to the contents of those specific communications.").

Accordingly, Intervenors have failed to meet their burden of establishing that the legislative privilege protects the Documents from disclosure.

## C.    Plaintiffs' Need for the Documents Overcomes any Qualified Privilege.

Even if the legislative privilege did apply here – and it does not – as Intervenors concede, it would be a qualified privilege.  (Motion 3, 11.)  Where, as here, the State's motives are at issue, that privilege is overcome by plaintiffs' need for the documents.  For example, in *Am. Trucking Associations*, 2020 WL 6255264, at *8, the District of Rhode Island held that, where, as here, the plaintiff alleged that the State violated the Commerce Clause, the legislative privilege gave way to the plaintiffs' need for the information.  That was particularly true given, as here, the strength of the federal interest in enforcing the Commerce Clause and the direct role of the individuals in question, including the Governor, in passing the legislation, which thereby evinced the State's intent.  *Id.* at *9.

Indeed, where, as here, a "cause of action is directed at the government's intent," courts

find it improper to allow the government to hide behind a privilege. *See In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998), *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998) ("If the plaintiff's cause of action is directed at the government's intent, ... it makes no sense to permit the government to use the privilege as a shield."); *Velazquez v. City of Chicopee*, 226 F.R.D. 31, 34 (D. Mass. 2004) (citation and quotations omitted) ("where the decision-making process itself is the subject of the litigation, it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information").

Here, Intervenors do not (and cannot) challenge the relevance of the Documents. Moreover, five of the Documents appear to relate to an email, dated June 5, 2020, produced by defendants in which Hughes expressly stated that both the Attorney General's office and OLLS had concluded that Section 10 violated the single subject rule of the Colorado Constitution:

> We have a major flag on the price floor part of the deal. Essentially the drafting office (OLLS) has said that it cant fit under single subject and has to be it's own piece of legislation. The AG's office agrees. So - that will have to move separately, and I'll be honest here, not sure how it survives. But the good news is if it does pass, it is NOT part of our ballot so we don't need to defend it to the voters. But if Altria cant get that, the deal might be in jeopardy, so its complicated.

(the "June 5 Email") (Burgo Decl. Ex. B [SOC_000278].) Specifically, Documents 3, 4, 7, 8, and 9 are dated June 4, the day before the June 5 Email, and concern "legal research." (Motion 6-7.)

This evidence of irregularities in the drafting process is highly relevant to the State's discriminatory purpose in enacting Section 10. *See also S.D. Farm Bureau v. Hazeltine*, 340 F.3d 583, 593-95 (8th Cir. 2004) (in Commerce Clause case, finding discriminatory purpose

based on statements by "co-chairmen of the organization responsible" for the bill, notes from

drafting meetings, testimony from the drafters, a memorandum from a non-profit bill proponent,

irregularities in the drafting process, and evidence that the drafters did not examine the potential

effectiveness of the bill in serving the State's asserted purpose); *Smithfield Foods, Inc. v. Miller*,

367 F.3d 1061, 1065 (8th Cir. 2004) (In determining whether a statute has a discriminatory effect

under the Commerce Clause, courts consider "the sequence of events leading up to the statute's

adoption, including irregularities in the procedures used to adopt the law."); *Waste Mgmt.*

*Holdings, Inc. v. Gilmore*, 252 F.3d 316, 336 (4th Cir. 2001) (quoting *Sylvia Dev. Corp. v.*

*Calvert County*, 48 F.3d 810, 819 (4th Cir. 1995)) (same).  The Documents are thus highly

relevant to plaintiffs' claims.  (*See generally* Dkt. No. 63.)

Intervenors' citations only support subordinating any qualified privilege to plaintiffs'

need under these circumstances.  In *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 672 (D. Ariz.

2016) (Motion 11), the court recognized the seriousness of a constitutional challenge to a state

law and the relevance of the legislature's intent in such a challenge, but simply found that the

evidence was not necessary in light of the "substantial availability of other evidence" including

"thousands of emails" from, and depositions of, numerous legislators – including of the legislator

asserting the privilege.  *Id.* at 672.[6]

---

[6]       Similarly, in *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 167 (S.D.N.Y. 2017), cited by Intervenors (Motion 11), the court found that there was no need to pierce the privilege for plaintiff's a First Amendment challenge for which the legislature's motive was irrelevant, and expressly distinguished circumstances, as here, involving "allegations of discrimination, pretext, and self-dealing, which necessarily implicate the purpose and motives behind the challenged law."  The legislators' intent was similarly irrelevant to the plaintiff's claims in *Pulte Home Corp. v. Montgomery Cty., Maryland*, No. GJH-14-3955, 2017 WL 2361167, at *5 (D. Md. May 31, 2017), where the plaintiff sought, among other things, takings damages relating to land use legislation that was passed affecting his land.  The court found that the legislative privilege applied particularly strongly where a private plaintiff sought to vindicate private rights.  Here, however, plaintiffs seek an injunction of an unconstitutional statute, not private damages.

## II.     THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT APPLY.

Intervenors' reliance on the deliberative process privilege (Motion 11) is similarly

unavailing, inasmuch as the deliberative process privilege applies to executive branch officials,

not state legislators.  *See Am. Trucking Assocs.*, 2020 WL 6255264, at *10 (citing *N. L. R. B. v.*

*Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)); *Kay v. City of Rancho Palos Verdes*, 2003

WL 25294710, at *15 (C.D. Cali. Oct. 10, 2003) (citing *A. Michael's Piano, Inc. v. FTC*, 18 F.3d

138, 147 (2d Cir. 1994)).[7]  Nor may Intervenors assert the deliberative privilege on the executive

branch's behalf.  *See In re Bacon v. Archer*, 2019 WL 2269722, at *3 (D. Colo. May 24, 2019)

(only holder of a privilege may assert it); *Sikorsky v. Aircraft Corp. v. U.S.*, 106 Fed. Cl. 571,

577 (2012) (citation omitted) ("the privilege can only be invoked by an agency head or his or her

subordinate after careful, personal review,  and that head or designee must identify the specific

information that is subject to the privilege and provide reasons for maintaining the

confidentiality of the pertinent record"); *McCowan v. City of Pennsylvania*, 2020 WL 6485097,

at *7 (E.D. Pa. Nov. 4, 2020) (assertion of deliberative process privilege through legal brief

instead of official's affidavit improper); *In re Methyl Tertiary Butyl Ether (MTBE) Prods.*

*Liability Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y. 2009).

In any event, the deliberative process privilege does not apply here. First, any privilege

was waived by virtue of the inclusion of third-parties.  *See Cook v. Rockwell Int'l Corp.*, 935 F.

Supp. 1452, 1472 (D. Colo. 1996) (emphasis added; internal quotations omitted)

("The deliberative process privilege shields from public disclosure ***confidential*** inter-agency

---

[7]     For example, *Mohammed v. Holder*, No. 07-CV-02697-MSK-BNB, 2014 WL 1042309, at *1 (D. Colo. Mar. 18, 2014), cited by Intervenors (Motion 12), involved a challenge to an administrative decision by the Bureau of Prisons.

16

memoranda on matters of law or policy."); *Shell Oil Co. v. I.R.S.*, 772 F. Supp. 202, 207, 209 (D.

Del. 1991) ("Where an authorized disclosure is voluntarily made to a non-federal party, whether

or not that disclosure is denominated "confidential" the government waives any claim that the

information is exempt from disclosure under the deliberative process privilege").  Second, any

qualified privilege is overcome by plaintiffs' need for the documents, which courts recognize is

strong in cases, as here, challenging government misconduct.  *See Fourhorn* 2009 WL 2407569,

at *2 (citing *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)) ("where there is reason to

believe the documents sought may shed light on government misconduct, 'the privilege is

routinely denied,' on the grounds that shielding internal government deliberations in this context

does not serve 'the public's interest in honest, effective government.'"); *supra* Part I.C.[8]

Additionally, the deliberative process privilege does not apply to the extent that the

Documents contain factual information and is waived to the extent that "the recommendations

within the documents in question are ultimately adopted, either formally or informally, or "'used

by the agency in its dealings with the public.'"  *NAACP v. Bureau of Census*, 401 F. Supp. 3d

608, 611-12 (D. Md. 2019) (quoting *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir.

1990)).

## III.    THE COMMON INTEREST DOCTRINE DOES NOT APPLY.

Contrary to the Intervenors' assertion (Motion 13-14), the common interest doctrine does

not apply here.  Under federal law, which applies here, "the common interest doctrine is

---

[8]        Intervenors' citation to *Nanticoke Lenni-Lenape Tribal Nation v. Porrino*, No. 15–5645 (RMB/JS), 2017
WL 4155368 (D.N.J. Sept. 19, 2017) supports disclosure.  (Motion 12.)  There, the court found that the plaintiff's
interest in the disclosure outweighed the State's interest in keeping the document confidential because the document
in question, as here, "goes to the heart of plaintiffs' case."  *Nanticoke Lenni*-Lenape, 2017 WL 4155368 at *12.

designed to protect communications between co-defendants or co-litigants. A common commercial interest and a common desire for the same outcome in a legal matter are **not** sufficient to establish a common interest." *See Beltran v. InterExchange, Inc.*, No. 14-CV-03074-CMA-CBS, 2018 WL 839927, at *4 (D. Colo. Feb. 12, 2018) (emphasis in original; internal citations and quotations omitted). *See also Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 638 (D. Colo. 2012) (citing *In re Qwest Commc'ns Int'l,* 450 F.3d at 1195) ("The 'joint defense' or 'common interest' doctrine is really an exception to the rule that the attorney-client privilege is waived when the communication at issue was made in the presence of a third-party. This kind of disclosure, however, is designed to protect communications between co-defendants or co-litigants . . . .").[9] Because there was no pending or threatened litigation at the time of the communications at issue, the common interest doctrine does not apply.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Intervenors' Motion for Protective Order.

---

[9] Intervenors' citations to state law cases are thus inapposite for the reasons discussed *supra* Part I.A. Although Intervenors refer to the "work product" doctrine, they appear to only refer to the state statute C.R.S. 2-3-505(2)(b). (Motion 2). The federal work product doctrine does not apply outside of the litigation context. *In re Gibco, Inc.*, 185 F.R.D. 296, 299 (D. Colo. 1997) ("When documents were prepared for mixed purposes, the work product privilege is available only if the primary motivating purpose was to assist in pending or impending litigation.").

Dated:   January 8, 2021

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: _____/s/ Marc E. Kasowitz_____
       Marc E. Kasowitz
       Daniel R. Benson
       Leonard A. Feiwus
       Paul J. Burgo
       Deva Roberts

1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800
Email:  mkasowitz@kasowitz.com

Maria Gorecki
KASOWITZ BENSON TORRES LLP
1400 16th Street
16 Market Square, Suite 400
Denver, CO 80202
Tel.: (720) 932-8303
Email:  mgorecki@kasowitz.com

       -and-

Suzanne Taheri
MAVEN LAW GROUP
1800 Glenarm Place, Suite 950
Denver, CO 80202
Phone: 303-218-7141
Email: staheri@mavenlawgroup.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on this 8th day of January, 2021, a true and correct copy of the foregoing **OPPOSITION TO INTERVENORS' MOTION FOR PROTECTIVE ORDER** was served via CM/ECF upon all counsel of record.

By:       /s/ Marc E. Kasowitz
                     Marc E. Kasowitz